[No. S026785. Feb. 4, 1993.]

SHERWIN-WILLIAMS COMPANY et al., Plaintiffs and Respondents, v. CITY OF LOS ANGELES, Defendant and Appellant.

894

## COUNSEL

James K. Hahn, City Attorney, John F. Haggerty, Assistant City Attorney, and Henry G. Morris, Deputy City Attorney, for Defendant and Appellant.

Seyfarth, Shaw, Fairweather & Geraldson and Michael Hickok for Plaintiffs and Respondents.

Rutan & Tucker, John L. Fellows III and Carrie Phelan as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**MOSK, J.**—We granted review in this matter to determine whether Penal Code section 594.1 (sometimes hereafter the statute), which mainly defines the lawful transfer and possession of aerosol paint and also requires retailers to post a warning against vandalism, preempts Los Angeles Municipal Code section 47.11 (sometimes hereafter the ordinance), which regulates the retail

display of aerosol paint and broad-tipped marker pens. As we shall explain, we conclude that it does not.

I

Plaintiffs, the Sherwin-Williams Company—which manufactures, distributes, and retails aerosol paint—and Plasti-Kote, Inc.—which manufactures and distributes the product—filed a consolidated complaint and petition for writ of mandate in the Los Angeles Superior Court against defendant, the City of Los Angeles, attacking Los Angeles Municipal Code section 47.11. In various causes of action, they claimed that the ordinance was preempted by Penal Code section 594.1, and was violative of due process of law under the Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a) of the California Constitution. They sought a temporary restraining order, preliminary injunction, and permanent injunction prohibiting defendant from enforcing the ordinance; a writ of mandate directing defendant to rescind the ordinance; and a judgment declaring the ordinance unconstitutional. Defendant filed an answer.

Finding preemption and not reaching the question of due process, the superior court issued a preliminary injunction prohibiting defendant from enforcing the ordinance to the extent that it regulated the retail display of aerosol paint in containers larger than six ounces. Defendant appealed.

Plaintiffs and defendant then stipulated that "[t]his case may be resolved . . . by a decision on cross-motions for summary judgment concerning the issue of preemption," having expressly "agree[d] that the case turns on th[at] issue," and proceeded to file their respective motions.

Finding preemption, the superior court entered judgment for plaintiffs in the form of (1) a permanent injunction prohibiting defendant from enforcing the ordinance to the extent that it regulated the retail display of aerosol paint in containers larger than six ounces and (2) a declaration that the ordinance was unconstitutional apparently to that extent. Defendant appealed.

Division Three of the Court of Appeal for the Second Appellate District consolidated the appeals on defendant's motion. Finding preemption, it subsequently affirmed.

Thereupon, defendant petitioned for review. We granted its request.

II

The issue we must resolve in this case is as follows: Does Penal Code section 594.1 preempt Los Angeles Municipal Code section 47.11? As will appear, the answer we must give is negative.

In order to resolve the issue, we must initially state the principles governing preemption analysis; then examine the statute and the ordinance, each on its own terms; and finally measure the latter against the former.

A

■ The general principles governing preemption analysis are these.

Under article XI, section 7 of the California Constitution, "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."[1]

"If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void." (*Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876]; accord, e.g., *IT Corp.* v. *Solano County Bd. of Supervisors* (1991) 1 Cal.4th 81, 90 [2 Cal.Rptr.2d 513, 820 P.2d 1023]; *People* ex rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 484 [204 Cal.Rptr. 897, 683 P.2d 1150]; *Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 807 [100 Cal.Rptr. 609, 494 P.2d 681].)

"A conflict exists if the local legislation ' "duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." ' " (*Candid Enterprises, Inc.* v. *Grossmont Union High School Dist., supra,* 39 Cal.3d at p. 885, which quotes, without citations, *People* ex rel. *Deukmejian* v. *County of Mendocino, supra,* 36 Cal.3d at p. 484, which in turn quotes, with citations, *Lancaster* v. *Municipal Court, supra,* 6 Cal.3d at pp. 807-808; accord, e.g., *IT Corp.* v. *Solano County Bd. of Supervisors, supra,* 1 Cal.4th at p. 90; *Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 423 [261 Cal.Rptr. 384, 777 P.2d 157]; *Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 290 [219 Cal.Rptr. 467, 707 P.2d 840].)

Local legislation is "duplicative" of general law when it is coextensive therewith. (See *In re Portnoy* (1942) 21 Cal.2d 237, 240 [131 P.2d 1]

[1]Under article XI, section 5, subdivision (a) of the California Constitution, a charter city, like defendant, "gain[s] exemption, *with respect to its municipal affairs,* from the 'conflict with general laws' restrictions of" article XI, section 7. (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61 [81 Cal.Rptr. 465, 460 P.2d 137], italics added [dealing with Cal. Const., art. XI, former §§ 6 and 8, subd. (j), which were virtually identical in relevant part to present § 5, subd. (a); also dealing with Cal. Const., art. XI, former § 11, which was virtually identical in relevant part to present § 7].) Defendant essentially concedes that the exemption of article XI, section 5, subdivision (a) does not operate as to the ordinance under challenge. It is right to do so. The matter covered by the measure cannot be characterized as a "municipal affair" within the meaning of the constitutional provision.

[finding "duplication" where local legislation purported to impose the same criminal prohibition that general law imposed].)

Similarly, local legislation is "contradictory" to general law when it is inimical thereto. (See *Ex parte Daniels* (1920) 183 Cal. 636, 641-648 [192 P. 442, 21 A.L.R. 1172] [finding "contradiction" where local legislation purported to fix a lower maximum speed limit for motor vehicles than that which general law fixed].)

Finally, local legislation enters an area that is "fully occupied" by general law when the Legislature has expressly manifested its intent to "fully occupy" the area (see, e.g., *Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.*, *supra*, 39 Cal.3d at p. 886), or when it has impliedly done so in light of one of the following indicia of intent: "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the" locality (*In re Hubbard* (1964) 62 Cal.2d 119, 128 [41 Cal.Rptr. 393, 396 P.2d 809], "overruled" on another point, *Bishop* v. *City of San Jose*, *supra*, 1 Cal.3d at p. 63, fn. 6; accord, e.g., *IT Corp.* v. *Solano County Bd. of Supervisors*, *supra*, 1 Cal.4th at pp. 90-91; *Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.*, *supra*, 49 Cal.3d at p. 423; *Cohen* v. *Board of Supervisors*, *supra*, 40 Cal.3d at pp. 292-293; *Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.*, *supra*, 39 Cal.3d at p. 886; *People* ex rel. *Deukmejian* v. *County of Mendocino*, *supra*, 36 Cal.3d at p. 485).

## B

Penal Code section 594.1 is set out in the margin.[2] Generally, the provision makes it a misdemeanor for anyone to sell or otherwise furnish aerosol paint to a minor without evidence of majority and identity (*id.*, subds. (a),

---

[2] "(a) It shall be unlawful for any person, firm, or corporation, except a parent or legal guardian, to sell or give or in any way furnish to another person, who is in fact under the age of 18 years, any aerosol container of paint that is capable of defacing property without first obtaining bona fide evidence of majority and identity.

"For purposes of this subdivision, 'bona fide evidence of majority and identity' is any document evidencing the age and identity of an individual which has been issued by a federal, state, or local governmental entity, and includes, but is not limited to, a motor vehicle

(f)); for a minor to buy aerosol paint (*id.*, subds. (b), (f)); for anyone, while in a designated posted public area, to carry aerosol paint on his person and in plain view without authorization (*id.*, subds. (d), (f)); and for a minor, while in a public place, to possess aerosol paint for the purpose of defacing property (*id.*, subds. (e), (f)). It also requires retailers of aerosol paint, under misdemeanor liability, to post a notice that the malicious defacing of property with paint is vandalism and is punishable by fine or imprisonment or both. (*Id.*, subds. (c), (f).) Therefore, in major part it specifies the persons who may or may not furnish or possess aerosol paint and also the places in which, and the circumstances under which, they may or may not do so; and in minor part it mandates a warning against vandalism.

The history of the statute is as follows.

In 1981, the Legislature passed "An act to add Section 594.1 to the Penal Code, relating to aerosol paint." (Stats. 1981, ch. 1125, p. 4404.) From before that time to the present, Penal Code section 594.5 has provided: "Nothing in this code shall invalidate an ordinance of, nor be construed to prohibit the adoption of an ordinance by, a city, city and county, or county, if such ordinance regulates the sale of aerosol containers of paint or other liquid substances capable of defacing property."

The 1981 act resulted from Assembly Bill No. 1675, 1981-1982 Regular Session. On a "Background Information" form prepared for the Senate

---

operator's license, a registration certificate issued under the federal Selective Service Act, or an identification card issued to a member of the armed forces.

"This subdivision shall not apply to the furnishing of six ounces or less of an aerosol container of paint to a minor for the minor's use or possession under the supervision of the minor's parent, guardian, instructor, or employer.

"(b) It shall be unlawful for any person under the age of 18 years to purchase an aerosol container of paint that is capable of defacing property.

"(c) Every retailer selling or offering for sale in this state aerosol containers of paint capable of defacing property shall post in a conspicuous place a sign in letters at least three-eighths of an inch high stating: 'Any person who maliciously defaces real or personal property with paint is guilty of vandalism which is punishable by a fine, imprisonment, or both.'

"(d) It is unlawful for any person to carry on his or her person and in plain view to the public an aerosol container of paint while in any posted public facility, park, playground, swimming pool, beach or recreational area, other than a highway, street, alley or way, unless he or she has first received valid authorization from the governmental entity which has jurisdiction over the public area.

"As used in this subdivision 'posted' means a sign placed in a reasonable location or locations stating it is a misdemeanor to possess a spray can of paint in such public facility, park, playground, swimming pool, beach or recreational area without valid authorization.

"(e) It is unlawful for any person under the age of 18 years to possess an aerosol container of paint for the purpose of defacing property while on any public highway, street, alley, or way, or other public place, regardless of whether that person is or is not in any automobile, vehicle, or other conveyance.

"(f) Violation of any provision of this section is a misdemeanor."

Committee on Judiciary, the source of the bill was identified as the "City of Los Angeles" and its purpose was given as this: "Graffiti . . . in the Los Angeles area is still a serious problem. ▪▪ ▪ This measure is drafted so that it will not interfere with the legitimate use of paints, but will make it more difficult for individuals to deface public/private properties."[3]

Section 1 of the 1981 act added Penal Code section 594.1 which, in its original form, covered only "aerosol container[s] of paint larger than six ounces (net weight of contents)." (Stats. 1981, ch. 1125, § 1, pp. 4404-4405.)

Section 2 of the 1981 act, which was not codified, declared: "It is the intent of the Legislature in enacting this act to preempt all local government regulations relating to sales and possession of aerosol containers of paint larger than six ounces (net weight of contents)." (Stats. 1981, ch. 1125, § 2, p. 4405.)

Section 3 of the 1981 act, also uncodified, stated that no appropriation was made and no reimbursement was required pursuant to, inter alia, article XIII B, section 6 of the California Constitution. (Stats. 1981, ch. 1125, § 3, p. 4405.)

In 1988, the Legislature passed "An act to amend Section 594.1 of the Penal Code, relating to crimes." (Stats. 1988, ch. 925, p. 2950.)

Section 1 of the 1988 act modified the statute into its present form, and reenacted it as so modified, to generally cover *all* "aerosol container[s] of paint." (Stats. 1988, ch. 925, § 1, pp. 2950-2951.)

---

[3]Plaintiffs request us to take judicial notice of a commendation letter from the assemblyman who was the author of Assembly Bill No. 1675, 1981-1982 Regular Session, to the then Governor, dated September 23, 1981, "not for the purpose of interpreting the specific language of the enactment, but rather as evidence of the historical circumstances of its adoption." In pertinent part, the letter states that the measure is a "compromise," a "consensus bill that has been worked on" by "all interested parties," including the "spray paint manufacturers" and the "City of Los Angeles."

We decline plaintiffs' request. As they themselves recognize, the assemblyman's commendation letter "may not be used to construe the statute . . . ." (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 900 [231 Cal.Rptr. 213, 726 P.2d 1288].) But neither may it be employed to establish the measure's history. "Ordinarily"—and this is an ordinary case—"a legislator's statements as to his motives or understandings"—such as those of the assemblyman—"are not admissible." (*Ibid.*)

We note in passing that plaintiffs made similar requests to the superior court and the Court of Appeal. The former impliedly denied the application. The latter appears to have done so as well.

Even if we were to judicially notice the assemblyman's commendation letter, our analysis would not be affected. (See fn. 6, *post.*)

Section 2 of the 1988 act, which was not codified, stated that no reimbursement was required pursuant to article XIII B, section 6 of the California Constitution.

There was no provision in the 1988 act analogous to section 2 of the 1981 act, which had declared that it was the "intent of the Legislature *in enacting th[at] act* to preempt" all specified local legislation. (Stats. 1981, ch. 1125, § 2, p. 4405, italics added.)

In light of its language and its history, the statute is properly characterized as a graffiti-prevention measure. It seeks to accomplish its goal mainly by defining the lawful transfer and possession of aerosol paint and also by requiring retailers to post a warning against vandalism.

Los Angeles Municipal Code section 47.11 is set out in the margin.[4] Generally, it requires retailers of aerosol paint and broad-tipped marker pens to display such items out of the public's reach.

The history of the ordinance is this. On November 16, 1990, the Los Angeles City Council passed Ordinance No. 166,399, which added the provision in question to the Los Angeles Municipal Code, under the title, "Display of Aerosol Spray Paint Containers and Marker Pens."

The motion that proposed what was to become the ordinance stated that "[t]he battle to control graffiti in the City continues to grow worse with each passing day"; noted the existence of Penal Code section 594.1, which "prohibit[s] the sale of aerosol containers of paint to persons under the age of eighteen"; and recommended "additional safeguards . . . to help insure that aerosol containers of paint are not stolen from business establishments."

In its preamble, the ordinance declared that "provisions of state law provide punishment for vandalism in the form of malicious defacing of property with paint, and prohibit the sale to or purchase by minors of aerosol spray paint containers capable of defacing property"; that "notwithstanding such prohibitions, graffiti caused by aerosol spray paint continues to proliferate in the City of Los Angeles due in substantial part to theft of aerosol spray paint containers"; that "graffiti can be created not only by aerosol spray paint, but also by large tipped marker pens"; and that "supplemental

---

[4] "Every person who owns, conducts, operates or manages a retail commercial establishment selling aerosol containers, or marker pens with tips exceeding four millimeters in width, containing anything other than a solution which can be removed with water after it dries, shall store or cause such aerosol containers or marker pens to be stored in an area viewable by, but not accessible to the public in the regular course of business without employee assistance, pending legal sale or disposition of such marker pens or paint containers."

local deterrents to the availability for use of aerosol containers of paint and marker pens are needed to further inhibit their use for graffiti purposes."

In light of its language and its history, the ordinance is also properly characterized as a graffiti-prevention measure. It seeks to accomplish its goal by regulating the retail display of aerosol paint and broad-tipped marker pens.[5]

## C

In determining whether Penal Code section 594.1 preempts Los Angeles Municipal Code section 47.11, the ultimate question we must answer is this: Does the ordinance conflict with the statute?

At the outset, we observe that there is no conflict whatsoever insofar as broad-tipped marker pens are concerned. The ordinance does indeed cover the items. The statute, however, does not even purport to do so. Plaintiffs conceded the point below. Rightly.

In proceeding with our analysis, we must first determine whether the ordinance duplicates the statute. It does not. Plainly, the former is not coextensive with the latter. True, both are graffiti-prevention measures. But each is different in scope and substance. The statute mainly defines the lawful transfer and possession of aerosol paint and also requires retailers to post a warning against vandalism. By contrast, the ordinance simply regulates the retail display of aerosol paint and broad-tipped marker pens.

We must next determine whether the ordinance contradicts the statute. It does not. The former is not inimical to the latter. As the description in the preceding paragraph makes clear, the ordinance does not prohibit what the statute commands or command what it prohibits.

We must finally determine whether the ordinance enters an area fully occupied by the statute.

The first of two subsidiary issues involves the presence or absence of *express* preemptive intent.

Without doubt, the Legislature expressly manifested an intent to fully occupy an area when it passed the 1981 act. As noted, section 1 of that

---

[5]Among the questions of interpretation that arise is this: Does the ordinance require "viewability" as well as "inaccessibility"? Its language suggests an affirmative answer, its purpose a negative. The issue, however, is of no consequence here. Its resolution, therefore, may be put off to another day.

measure added Penal Code section 594.1, which, in its original form, covered only "aerosol container[s] of paint larger than six ounces (net weight of contents)." (Stats. 1981, ch. 1125, § 1, pp. 4404-4405.) Section 2 declared that it was the "intent of the Legislature in enacting this act to preempt all local government regulations relating to sales and possession of aerosol containers of paint larger than six ounces (net weight of contents)." (Stats. 1981, ch. 1125, § 2, p. 4405.) The reason for the declaration is plain. Without such a provision, the statute would be "non-preemptive," at least as to sales, by operation of Penal Code section 594.5, which states that "[n]othing in this code shall invalidate an ordinance . . . , nor be construed to prohibit the adoption of an ordinance . . . , if such ordinance regulates the sale of aerosol containers of paint . . . ."

But also without doubt, the Legislature did *not* expressly manifest an intent to fully occupy an area when it passed the 1988 act. As noted, section 1 of that measure modified Penal Code section 594.1 into its present form, and reenacted it as so modified, to generally cover aerosol paint, no matter what the size of the container. Section 2 of the 1988 act was a "no reimbursement" clause similar to section 3 of the 1981 act. But there was no provision in the 1988 act, analogous to section 2 of the 1981 act, declaring that it was the intent of the Legislature *in enacting the 1988 act* to preempt any local legislation.

It follows that express preemptive intent is absent. Such an intent was stated *in the 1981 act specifically for the 1981 act*. It was not stated at all in the 1988 act.[6]

The second of the two subsidiary issues referred to above involves the presence or absence of *implied* preemptive intent.

---

[6]Our analysis would not be affected if we were to judicially notice the assemblyman's commendation letter. (See fn. 3, *ante*.) Let us assume that the 1981 act that added Penal Code section 594.1 was, in fact, a "compromise," a "consensus bill that has been worked on" by "all interested parties," including the "spray paint manufacturers" and the "City of Los Angeles." The letter, however, does not describe the nature of the "compromise" or the character of the "consensus." It certainly does not undermine the discussion set out above. In any event, the preemption declaration of the 1981 act—which is crucial for present purposes—is without effect here.

We note in passing that during the pendency of this action, Senate Bill No. 1642, 1991-1992 Regular Session, was introduced. It would have amended Penal Code section 594.5 to expressly allow an ordinance like that under challenge. It subsequently failed passage in committee, five members voting "aye" and four "no." For present purposes, we find nothing of significance in these events. The introduction of the bill may reflect its author's sense that Penal Code section 594.1 did in fact preempt ordinances such as that here, and that the statute should be changed. Or it may demonstrate a view that there was no such bar, and that mere clarification was in order. Similarly, the failure of the bill may reveal the opinion of the four opposing committee members that the statute did indeed prohibit ordinances like the present, and that it should continue to do so. Or it may manifest a view that no preclusion of this sort existed, and that no action was necessary. In *State Compensation Ins. Fund* v.

Preliminarily, we address a question suggested by the peculiar facts of this unique case. Even though there is no preemption declaration expressed in the 1988 act, might not such a declaration be implied in view of the preemption declaration of the 1981 act? We think not. In both 1981 and 1988, the Legislature was acting, and presumably knew that it was acting, in the context of Penal Code section 594.5, which by its very terms would render any aerosol paint legislation "non-preemptive," at least as to sales. Hence, in both years, it was obligated, and presumably knew that it was obligated, to take affirmative steps if it intended to preempt. In 1981, it took such steps: it included the preemption declaration. In 1988, it did nothing. It certainly knew how to copy: in the earlier year, it inserted a "no reimbursement" clause; in the later, it inserted a similar clause. To our mind, the conclusion is clear. In 1981, it expressly intended to preempt. In 1988, it impliedly intended not to.

To return to the general principles of preemption analysis. The first potential indicium of implied preemptive intent focuses on whether the subject matter of the ordinance has been so covered by the statute as to clearly indicate that the field has become exclusively a matter of state concern.

At the outset, the subject matter of the ordinance must be specified. Most broadly defined, in conformity with its purpose, the field is the prevention of graffiti. Most narrowly defined, in accordance with its terms, the field is the retail display of aerosol paint and broad-tipped marker pens.

As will appear, it matters not how the subject matter of the ordinance is specified.

The statute does not exclusively cover the field of the prevention of graffiti. As stated, it mainly defines the lawful transfer and possession of aerosol paint and also requires retailers to post a warning against vandalism. Its scope is therefore limited. Indeed, other related statutory provisions affirmatively authorize or allow local governments to act to prevent graffiti. (See Rev. & Tax. Code, § 7287 et seq.; Gov. Code, § 53069.3.) For example, certain provisions enable the levying of a local retail sales tax on items including aerosol paint and broad-tipped marker pens. (Rev. & Tax. Code,

---

*Workers' Comp. Appeals Bd.* (1979) 88 Cal.App.3d 43, 63 [152 Cal.Rptr. 153], the Court of Appeal "agree[d] with the view that ' "[a]s evidences of legislative intent [unpassed bills] have little value." ' " So do we. (*Yoshisato* v. *Superior Court* (1992) 2 Cal.4th 978, 991, fn. 7 [9 Cal.Rptr.2d 102, 831 P.2d 327].)

§ 7287, subd. (a.).)[7] More significantly still, other provisions permit the "enactment . . . of any criminal law with respect to nuisance," including nuisance caused by graffiti. (Gov. Code, § 53069.3.)

Neither does the statute exclusively cover the field of the retail display of aerosol paint and broad-tipped marker pens. In fact, it does not bear on this matter in any way whatsoever. The point is clear as to aerosol paint. It is clearer still as to broad-tipped marker pens, which are not even mentioned. One may conceivably argue that by requiring retailers of aerosol paint to post a warning against vandalism, the Legislature has impliedly barred local governments from requiring them to do anything else. Such an argument, however, would prove unpersuasive. No implied bar of this kind is evident in any intrinsic or extrinsic materials. Indeed, the Legislature has effectively allowed local governments, if they choose to levy a local retail sales tax on items including aerosol paint, to require retailers to collect the tax thereon. (Rev. & Tax. Code, § 7287.4.)

The second potential indicium of implied preemptive intent focuses on whether the subject matter of the ordinance has been partially covered by the statute in such terms as to clearly indicate that a paramount state concern will not tolerate local governmental action.

Again, it does not matter how the subject matter of the ordinance is specified.

As relevant here, the statute does not partially cover the field of the prevention of graffiti in preclusive terms. Of course, it does in fact so cover the field to the extent that it defines the lawful transfer and possession of aerosol paint and the requirement that retailers post a warning against vandalism. But that is immaterial, inasmuch as the ordinance simply does not enter this area.

In no part or aspect does the statute partially cover the field of the retail display of aerosol paint and broad-tipped marker pens in preclusive terms. This is because, as stated above, it does not bear on this matter in any way whatsoever.

The third potential indicium of implied preemptive intent focuses on whether the subject matter of the ordinance has been partially covered by the

---

[7]Early in the proceedings in the superior court, plaintiffs had argued to the effect that the existence of the local sales tax enabling provisions suggested that the field of graffiti prevention was otherwise expressly preempted. They soon abandoned the argument. Understandably. The existence of the provisions in question simply reflects the fact that the field of sales and use taxation is otherwise expressly preempted. (Stats. 1968, ch. 1265, § 2, pp. 2388-2389.)

statute *and* is of such a nature as to cause an undue adverse effect on the transient citizens of the state.

Yet again, it does not matter how the subject matter of the ordinance is specified.

Whether the statute partially covers the subject matter, however specified, proves to be of no consequence. This is because neither the prevention of graffiti nor the retail display of aerosol paint and broad-tipped marker pens is a "matter in which transient citizens of the state are peculiarly concerned, as they are or might be in regulation of traffic or registration of criminals." (*In re Hubbard, supra,* 62 Cal.2d at p. 128, "overruled" on another point, *Bishop* v. *City of San Jose, supra,* 1 Cal.3d at p. 63, fn. 6.)

In view of the foregoing, we conclude that the statute does not preempt the ordinance: the latter does not conflict with the former.[8]

## III

It follows that the superior court erred when it issued its order for a preliminary injunction and subsequently rendered its judgment for a permanent injunction and a declaration of unconstitutionality, and that the Court of Appeal erred when it affirmed that order and judgment. Both the superior court and the Court of Appeal found preemption. There is none to be found.[9]

---

[8]After we granted review, we requested the parties to include in their briefs a discussion of the relevance, if any, of Penal Code section 594.5, which is quoted in the text, in light of article IV, section 9 of the California Constitution, which declares in pertinent part that a "section of a statute may not be amended unless the section is re-enacted as amended."

In their briefs, defendant and amici curiae (consisting of 62 California cities) argue that the preemption declaration of the 1981 act adding Penal Code section 594.1 purported to amend the expressly "non-preemptive" (at least as to sales) Penal Code section 594.5, but failed to do so because it did not comply with the constitutional requirement.

For their part, plaintiffs argue that the preemption declaration of the 1981 act did not purport to amend any statute and therefore did not come within the ambit of the constitutional requirement; rather, the declaration conflicted with, and thereby impliedly repealed, Penal Code section 594.5 to the extent it allowed local regulation of aerosol paint in containers larger than six ounces.

The argument of defendant and amici curiae fails for the reason stated by plaintiffs. The preemption declaration of the 1981 act simply did not purport to amend any statute and therefore did not come within the ambit of the constitutional requirement.

The argument of plaintiffs also fails. The preemption declaration of the 1981 act did not conflict with Penal Code section 594.5. To be sure, the latter states that nothing "in this code" shall preempt. The former, however, is not *in the code*.

Consequently, we are of the view that Penal Code section 594.5 is relevant only as indicated in the text, and that article IV, section 9 of the California Constitution is relevant not at all.

[9]As noted, plaintiffs based their consolidated complaint and petition for writ of mandate not only on a claim of preemption but also on a claim of violation of the federal and state

Accordingly, we reverse the judgment of the Court of Appeal with directions to remand the cause to the superior court with directions to enter judgment in favor of defendant.

Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

LUCAS, C. J., Dissenting.—The Legislature has expressly declared that it intended Penal Code section 594.1 (all further statutory references are to this code unless otherwise indicated) to preempt "all local government regulations relating to sales and possession of aerosol containers of paint larger than six ounces . . . ." (Stats. 1981, ch. 1125, § 2, p. 4405.) The majority opinion concludes this uncodified statute does not preempt Los Angeles Municipal Code section 47.11, which purports to regulate the display for sale of aerosol paint containers in Los Angeles County. Because I believe the majority's position does not give adequate weight to the Legislature's explicit intent to preempt local regulations, I respectfully dissent.

I

Prior to 1981, the rule concerning local regulation of the sale of aerosol paint was clearly one of nonpreemption. Section 594.5, added in 1974 and amended in 1979, states: "Nothing in this code shall invalidate an ordinance of, nor be construed to prohibit the adoption of an ordinance by, a city, city and county, or county, if such ordinance regulates the sale of aerosol containers of paint or other liquid substances capable of defacing property."

The 1981 legislation that created section 594.1, which regulates the sale and possession of aerosol paint cans (Stats. 1981, ch. 1125, § 1, pp. 4404-4405), also included an uncodified statute setting forth the Legislature's intent that new section 594.1 preempt all local regulations on the subject. (Stats. 1981, ch. 1125, § 2, p. 4405.) This new preemption provision clearly altered the status quo and superseded section 594.5 on the issue of preemption, at least with regard to cans containing more than a net weight of six ounces of paint.

This conclusion follows for three reasons. First, we must assume the Legislature, when enacting the preemption provision into the 1981 act, was aware of section 594.5 (*In re Michael G.* (1988) 44 Cal.3d 283, 293 [243 Cal.Rptr. 224, 747 P.2d 1152] [Legislature is presumed to be aware of preexisting law]), and "intend[ed] to maintain a consistent body of rules."

---

constitutional guaranties of due process of law. They effectively abandoned the latter, however, when they expressly "agree[d]" with defendant "that the case turns on the issue of preemption . . . ."

(*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].) Second, we can safely assume that the Legislature intended the 1981 act to supersede section 594.5 because "later enacted statutes ordinarily control over previously enacted statutes." (*In re Michael G., supra*, at p. 293.) Third, section 594.5 is more general than the preemption provision of the 1981 act, which speaks in terms of "sales and possession" of containers of a certain weight. It is a "general principle of statutory construction that a specific provision relating to a particular subject prevails over a general provision on that subject." (*Cumero* v. *Public Employment Relations Bd.* (1989) 49 Cal.3d 575, 587 [262 Cal.Rptr. 46, 778 P.2d 174]; *Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 976-977, fn. 8 [140 Cal.Rptr. 669, 568 P.2d 394].)[1] It thus follows that the preemption provision of the 1981 act superseded section 594.5.

The Legislature thereafter amended section 594.1 in 1988 to make its provisions generally applicable to all aerosol containers of paint, irrespective of the net weight of the contents. (Stats. 1988, ch. 925, § 1, pp. 2950-2951.) The majority opinion concludes this amendment, by not expressly including a statement of preemptive intent, necessarily eliminated the Legislature's previously stated intent in enacting section 594.1. It is here the majority opinion makes its fatal misstep.

" 'In construing . . . statutory provisions, . . . the intent of the enacting body is the paramount consideration. [Citations.] "We are mindful that the goal of statutory construction is ascertainment of legislative intent so that the purpose of the law may be effectuated." ' (*In re Lance W.* (1985) 37 Cal.3d 873, 889 [210 Cal.Rptr. 631, 694 P.2d 744].)" (*Yoshisato* v. *Superior Court* (1992) 2 Cal.4th 978, 989 [9 Cal.Rptr.2d 102, 831 P.2d 327]; see *Taxpayers to Limit Campaign Spending* v. *Fair Pol. Practices Com.* (1990) 51 Cal.3d 744, 764 [274 Cal.Rptr. 787, 799 P.2d 1220].)

To discern the Legislature's intent, it is appropriate to first examine the actual language of the 1988 amendment. The 1988 act begins: "SECTION 1. Section 594.1 of the Penal Code is amended to read . . . ." (Stats. 1988, ch. 925, § 1, p. 2950.) Thus, the express purpose of the 1988 amendment was to amend a particular section of the Penal Code. There is no mention in the 1988 act of the topic of preemption, or of section 2 of the 1981 act. Thus, the 1988 act does not purport to address, expressly or otherwise, the preemption provision in the 1981 act.

---

[1]Moreover, it is not significant that the preemption provision of the 1981 act was uncodified, whereas the Legislature codified section 594.5. "The codes of this state . . . have no higher sanctity than any other statute regularly passed by the [L]egislature." (*County of Los Angeles* v. *Payne* (1937) 8 Cal.2d 563, 574 [66 P.2d 658]; see *Crespin* v. *Kizer* (1990) 226 Cal.App.3d 498, 510, fn. 8 [276 Cal.Rptr. 571].)

Moreover, it is both unreasonable and contrary to well-established canons of statutory construction to conclude that the Legislature, by not mentioning the preemption provision in the 1988 amending legislation, intended to repeal the provision. "Accepted principles of statutory construction disfavor repeal by implication . . . ." (*People* v. *King* (1978) 22 Cal.3d 12, 23 [148 Cal.Rptr. 409, 582 P.2d 1000]; see *Fuentes* v. *Workers' Comp. Appeals Bd.*, *supra*, 16 Cal.3d at p. 7.)

We need not rely solely on technical rules of statutory construction, however, because reasonable deductions drawn from the history of this statutory scheme also reveal a legislative intent to preempt. As noted above, the Legislature first stated explicitly that no state law should preempt local regulation. (§ 594.5.) Later, presumably finding that approach insufficient or undesirable in attaining its legitimate goals, the Legislature again spoke clearly, explicitly stating a rule of preemption in the field of aerosol paint regulation. (Stats. 1981, ch. 1125, § 2, p. 4405.) Given this history, it is unreasonable to conclude the Legislature, having *expressly* set forth its motivating intent justifying first section 594.5, and then section 594.1, nevertheless *impliedly* abandoned its basic intent by making a minor statutory amendment in 1988. Instead, the more reasonable conclusion is that the preemption provision of the 1981 act was unaffected by the 1988 amendment of section 594.1.

The majority opinion's grudging view of the efficacy of the 1981 preemption provision is inappropriate for another reason. Unlike the more common situation in which courts must attempt to divine from extrinsic sources the legislative intent concerning a particular statute, "where the main purpose of the statute *is expressed*[,] the courts will construe it so as to effectuate that purpose by reading into it what is necessary or incident to the accomplishment of the object sought." (*People* v. *Melton* (1988) 206 Cal.App.3d 580, 592 [253 Cal.Rptr. 661], italics added; see *Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 810 [151 P.2d 505, 157 A.L.R. 324]; *Rushing* v. *Powell* (1976) 61 Cal.App.3d 597, 604 [130 Cal.Rptr. 110].) Here, we have *an express statement of the Legislature's intent* in this case to preempt local regulation. Thus, courts should interpret that statement generously and defer to such legislative judgment, viewing the legitimacy of local regulation of aerosol paint with a more critical eye so as to effectuate the clear intention of the Legislature.

## II

Concluding that the 1981 preemption provision survived the 1988 amendment to section 594.1, however, does not end the inquiry. Because the 1981

preemption provision does not preempt every conceivable local regulation, we must still decide whether Los Angeles Municipal Code section 47.11, falls within the scope of the preemption provision. Unlike the majority opinion, I conclude the local law is preempted.

As noted above, the 1981 preemption provision would preempt "all local government regulations relating to sales and possession of aerosol containers of paint larger than six ounces . . . ." (Stats. 1981, ch. 1125, § 2, p. 4405.) Los Angeles Municipal Code section 47.11, requires retailers to display aerosol paint containers in such a way that customers may view the merchandise, but may not gain access to it without the assistance of an employee of the retailer. (See maj. opn., *ante*, at p. 901, fn. 4.) As the majority opinion explains, local officials believed these additional regulations were necessary because the grafitti problem was continuing unabated in Los Angeles, and thus "supplemental local deterrents to the availability for use of aerosol containers of paint . . . are needed . . . ." (See, *ante*, at pp. 901-902 [quoting the preamble to the local ordinance].) It is beyond question that these "supplemental local deterrents" relate to "possession" of cans of spray paint.

To the extent the local ordinance affects paint canisters of more than six ounces, it clearly "relat[es] to sales and possession of aerosol containers of paint . . . ." It follows that Los Angeles Municipal Code section 47.11 is preempted by section 594.1.

### III

In sum, I would uphold the Legislature's clear and explicit intent to preempt local regulations relating to the sales and possession of aerosol paint containers, and conclude that Los Angeles Municipal Code section 47.11 is preempted by state law. Of course, the Legislature remains free to modify section 594.1 to further clarify whether it intends to permit local regulation such as Los Angeles Municipal Code section 47.11. Because the majority opinion finds the local ordinance is not preempted, however, I respectfully dissent.