[No. C062628. Third Dist. May 13, 2010.]

PRIME GAS, INC., Plaintiff and Appellant, v.
CITY OF SACRAMENTO, Defendant and Respondent.

698

[BLACK REDACTION BAR]

COUNSEL

Law Offices of Richard E. Coombs and Richard E. Coombs for Plaintiff and Appellant.

Eileen M. Teichert, City Attorney, and Sheri M. Chapman, Deputy City Attorney, for Defendant and Respondent.

OPINION

BUTZ, J.—In this appeal we conclude that a local ordinance that prohibits the sale of tobacco products to minors through the sanction of suspending or revoking the retailer's local license to sell tobacco, is not preempted by state law which also prohibits tobacco sales to minors. Consequently, we shall affirm the trial court's judgment finding no preemption.

## FACTUAL AND PROCEDURAL BACKGROUND

The City of Sacramento (City) has adopted an ordinance (the Ordinance) that requires local tobacco retailers to be licensed by City. (Sac. City Code, § 5.138.010 et seq.; see *id.*, § 5.138.040.)

The stated purpose of the Ordinance "is to encourage responsible tobacco retailing and to discourage violations of tobacco-related laws, especially those that prohibit or discourage the sale or distribution of tobacco products to minors . . . ." (Sac. City Code, § 5.138.020.)

Under the Ordinance, "[i]t shall be a violation of a license for a licensee or his or her agents or employees to violate any local, state, or federal tobacco-related law." (Sac. City Code, § 5.138.100.)

The Ordinance specifies that "within any five-year period," the license shall be suspended for 30 days upon a finding by the city manager of a first violation, for 90 days upon a second violation, for one year upon a third violation, and revoked upon a fourth violation. (Sac. City Code, § 5.138.110, subd. A.1.–4.)

A license suspension or revocation is subject to review pursuant to an evidentiary-based administrative hearing before a hearing examiner whose decision "shall be in writing and shall contain findings of fact and a determination of the issues presented." (Sac. City Code, § 5.138.150, subd. A.; see also *id.*, §§ 5.138.110 to 5.138.150.) The hearing examiner's decision is subject to judicial review pursuant to a writ of administrative

mandate. (Sac. City Code, § 5.138.150; see Code Civ. Proc., §§ 1094.5, 1094.6.) Any suspension or revocation of a license is stayed during the pendency of the administrative hearing process, if the hearing request has been properly and timely filed. (Sac. City Code, § 5.138.120, subd. G.)

That brings us to the specific license violation at issue here.

Appellant is Prime Gas, Inc. (Prime). Prime is a retailer that sells tobacco products, among other items. Prime obtained a tobacco retailer license (local license) from City.

City alleged that Prime violated the Ordinance by selling cigarettes to a decoy minor on April 26, 2008, while failing to ask the minor's age or to check the minor's identification, in violation of Penal Code section 308 (which prohibits cigarette sales to minors).

Following the evidentiary-based administrative hearing, the hearing examiner upheld City's decision to suspend Prime's local license for 30 days for this first violation.

Prime then petitioned for a writ of administrative mandate in the trial court. Prime contended that the Ordinance was preempted by state law and that the administrative hearing violated due process. The trial court disagreed on both points and denied the petition.

This appeal ensued.

## DISCUSSION

■ On appeal, Prime contends (1) the Ordinance is preempted by state law, and (2) hearsay aspects of the administrative hearing violated due process. We disagree on both counts.

### I. State Law Does Not Preempt the Ordinance

The legal principles governing state preemption of local law were recently summarized by our state Supreme Court in *O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061 [63 Cal.Rptr.3d 67, 162 P.3d 583] (*O'Connell*). *O'Connell* stated:

■ " 'Under article XI, section 7 of the California Constitution, "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general [state] laws." [¶] "If otherwise valid local legislation conflicts with state law,

it is preempted by such law and is void." [Citations.] [¶] "A conflict exists if the local legislation ' "*duplicates, contradicts*, or *enters an area fully occupied* by general law, either expressly or by legislative implication." ' " [Citations.]' [Citations.] We explain the italicized terms below.

"A local ordinance *duplicates* state law when it is 'coextensive' with state law. (*Sherwin-Williams* [*Co. v. City of Los Angeles* (1993)] 4 Cal.4th [893,] 897–898 [16 Cal.Rptr.2d 215, 844 P.2d 534] [(*Sherwin-Williams*)], citing *In re Portnoy* (1942) 21 Cal.2d 237, 240 [131 P.2d 1] [as 'finding "duplication" where local legislation purported to impose the same criminal prohibition that general law imposed'].)

"A local ordinance *contradicts* state law when it is inimical to or cannot be reconciled with state law. (*Sherwin-Williams, supra*, 4 Cal.4th at p. 898, citing *Ex parte Daniels* (1920) 183 Cal. 636, 641–648 [192 P. 442] [as finding ' "contradiction" ' in a local ordinance that set the maximum speed limit for vehicles below that set by state law].)

"A local ordinance *enters a field fully occupied* by state law in either of two situations—when the Legislature 'expressly manifest[s]' its intent to occupy the legal area or when the Legislature 'impliedly' occupies the field. [Citations.]

■ "When the Legislature has not expressly stated its intent to occupy an area of law, we look to whether it has *impliedly* done so. This occurs in three situations: when ' "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the" locality.' " (*O'Connell, supra*, 41 Cal.4th at pp. 1067–1068.)

With these principles in mind, we turn to the state laws at issue.

Three state laws cover the sale of tobacco products to minors: Penal Code section 308; the Stop Tobacco Access to Kids Enforcement Act (the STAKE Act) (Bus. & Prof. Code, § 22950 et seq.);[1] and the Cigarette and Tobacco Products Licensing Act of 2003 (the state Licensing Act of 2003 or the state Licensing Act) (§ 22970 et seq.).

---

[1] Undesignated statutory references are to the Business and Professions Code.

We will summarize these three state laws now and discuss their preemptive aspects after that.

### A. *Summary of State Laws*

#### 1. *Penal Code Section 308.*

■ Penal Code section 308 has criminally prohibited the sale of tobacco products to minors for nearly 120 years. (Stats. 1891, ch. 70, § 1, p. 64.) In its current manifestation as pertinent here, it states that "[e]very person, firm, or corporation that knowingly," or that should know, "sells, gives, or in any way furnishes to another person who is under the age of 18 years" any tobacco product, "is subject to either a criminal action for a misdemeanor or to a civil action brought by a city attorney, a county counsel, or a district attorney, punishable by a fine of" $200 for the first offense, $500 for the second, and $1,000 for the third. (Pen. Code, § 308, subd. (a)(1).)

Penal Code section 308, subdivision (e) covers preemption. It states: "It is the Legislature's intent to regulate the subject matter of this section. As a result, no city, county, or city and county shall adopt any ordinance or regulation inconsistent with this section." (Pen. Code, § 308, subd. (e).)

#### 2. *The STAKE Act.*

■ The STAKE Act was enacted in 1994 to assist California in complying with federal regulations, particularly the "Synar Amendment," that restrict tobacco sales to minors, that require states to vigorously enforce their own laws on this subject, and that allow states to obtain funding from a multi-billion dollar litigation settlement reached between several tobacco companies and several state attorneys general in the 1990's. (See § 22951 [Stats. 1994, ch. 1009, § 1, p. 5987]; *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2004) 116 Cal.App.4th 1253, 1257–1259 [11 Cal.Rptr.3d 317]; 42 U.S.C. § 300x-26; 45 C.F.R. § 96.130 (2009).)

The STAKE Act allows an "enforcing agency," which includes a city or county, to "assess civil penalties [specified in the act] against any person, firm, or corporation that sells, gives, or in any way furnishes to another person who is under the age of 18 years" a tobacco product. (§ 22958, subd. (a); see § 22950.5, subd. (b).) The civil penalties under the act range from $400 to $600 for the first violation to $5,000 to $6,000 for a fifth or subsequent violation "within a five-year period." (§ 22958, subd. (a).)

The STAKE Act does not include a general provision covering preemption but does set forth an extensive role for local agencies to play in tobacco retailing. To take one example, aside from STAKE's recognition that an "enforcing agency" under the act includes a city attorney or a county counsel, STAKE's legislative findings and declarations state, in part: "Full compliance and vigorous enforcement of the 'Synar Amendment' [federal law covering the 1990's settlement agreement noted above] requires the collaboration of multiple state and local agencies that license, inspect, or otherwise conduct business with retailers . . . that sell tobacco." (§ 22951.)

3. *The State Licensing Act of 2003.*

 The third state law at issue, the state Licensing Act of 2003, established a state licensing program for tobacco manufacturers, importers, wholesalers, distributors and retailers administered by the State Board of Equalization. (Stats. 2003, ch. 890, § 1; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 71 (2003–2004 Reg. Sess.) as amended June 19, 2003, p. 1; see § 22970.1, subd. (d).) In its legislative findings and declarations, the state Licensing Act specifies that the "licensing of [these tobacco-related entities] will help stem the tide of untaxed distributions and illegal sales of cigarettes and tobacco products." (§ 22970.1, subd. (d).)

The state Licensing Act of 2003 includes a section on administrative penalties that the State Board of Equalization can assess on tobacco retailers for violating the expressly referenced STAKE Act or Penal Code section 308. (Bus. & Prof. Code, § 22974.8.) These penalties start, for a first violation, with a warning about license suspension or revocation; proceed to respective fines of $500 and $1,000 for second and third violations within 12 months; and progress to a 90-day suspension of the retailer's state license to sell tobacco products for the fourth through seventh violations within 12 months, and to license revocation for the eighth violation within 24 months (these penalties apply only if a specified survey shows that at least 13 percent of youth are able to purchase cigarettes). (§ 22974.8, subds. (a)(1), (b), (d).)

The state Licensing Act of 2003 has a general provision on preemption. It specifies: "Nothing in this [act] preempts or supersedes any local tobacco control law other than those related to the collection of state taxes. Local licensing laws may provide for the suspension or revocation of the local license for any violation of a state tobacco control law." (§ 22971.3.)

### B. Preemptive Aspects of the Three State Laws

1. *Penal Code Section 308.*

Turning to the specifics of preemption, we start with Penal Code section 308. As noted, this section includes a preemption provision, stating, "It is the

Legislature's intent to regulate the subject matter of this section. As a result, no city, county, or city and county shall adopt any ordinance or regulation inconsistent with this section." (Pen. Code, § 308, subd. (e).)

■ The decision in *Bravo Vending v. City of Rancho Mirage* (1993) 16 Cal.App.4th 383 [20 Cal.Rptr.2d 164] (*Bravo*) exhaustively analyzed the preemptive aspects of this Penal Code section 308 language in finding a city ordinance not preempted. The ordinance in *Bravo* banned cigarette sales through vending machines so as to discourage cigarette sales to minors. *Bravo* concluded that "the regulatory field preempted by [Penal Code] section 308 is that of the penal—i.e., both criminally and civilly proscribed—aspects of the sale of cigarettes to minors: To whom is it illegal to sell cigarettes, and what are the penal consequences of doing so?" (*Bravo, supra*, at p. 403.)

*Bravo* concluded that even though the purpose of the ordinance there was to discourage the violation of Penal Code section 308 by banning cigarette vending machines from which illegal sales to minors frequently occur, that ordinance did not impermissibly intrude into the field preempted by section 308. (*Bravo, supra*, 16 Cal.App.4th at p. 409.)

■ In arriving at this conclusion, *Bravo* relied on a legal principle gleaned from *Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277 [219 Cal.Rptr. 467, 707 P.2d 840] (*Cohen*). That principle specifies that, "when the state has preempted the regulatory field regarding the criminal aspects of a particular activity, a local government may nevertheless impose substantive regulations concerning the manner of operation of a lawful business which [fosters, profits from, or provides an environment for activities proscribed by state law] so long as the ordinance (1) is intended to discourage the activity proscribed by state law and (2) does not attempt to either expand or reduce the degree to which the particular activity regulated by state law is criminally proscribed." (*Bravo, supra*, 16 Cal.App.4th at p. 412; see *Cohen, supra*, 40 Cal.3d at pp. 298–299.) As *Cohen* explained: "A[] [city] ordinance is not transformed into a [state] statute prohibiting crime [if so transformed, it would be preempted] simply because the city uses its licensing power to discourage illegitimate activities associated with certain businesses. Most licensing ordinances have a direct impact on the enforcement of state laws which have been enacted to preserve the health, safety and welfare of state and local citizens. This fact does not deprive a municipality of the power to enact them [under the two conditions noted in *Bravo*]." (*Cohen, supra*, 40 Cal.3d at p. 299.)

In applying this principle to the facts before it, the *Bravo* court reasoned that the vending machine ordinance neither expanded nor attempted to limit the extent to which cigarette sales to minors were proscribed; instead, the

ordinance discouraged violations of Penal Code section 308 "by regulating the manner in which cigarettes are made available for sale." (*Bravo, supra*, 16 Cal.App.4th at p. 412.)

Arguably, *Bravo* can be read for and against preemption here.

As for reading the *Bravo* decision "against preemption" here, the Ordinance is a substantive regulation that regulates the business of selling cigarettes, which, in line with the *Cohen* principle, (1) discourages the activity proscribed by Penal Code section 308 and (2) does not affect the degree to which the particular activity regulated by state law is *criminally* proscribed. (*Bravo, supra*, 16 Cal.App.4th at p. 412; see also *id.* at pp. 411, 413.) The Ordinance requires a local license to sell tobacco products and it provides for suspension or revocation of that license if such products are sold to minors. The decisions in *Cohen* and *Bravo* recognize a distinction between an ordinance that is in substance a criminal statute because it prohibits and penalizes conduct already criminalized by state law (and as such is preempted), and an ordinance, like the Ordinance, that allows such conduct to be grounds for the civil suspension of a business license (and as such is not preempted). (See *Bravo, supra*, at pp. 411–412; *Cohen, supra*, 40 Cal.3d at pp. 298–299.)

As for reading the *Bravo* decision "for preemption" here, *Bravo* noted that for an ordinance to escape preemption under the *Cohen* principle, the ordinance must be limited to regulating merely the "*manner of operation* of a lawful business"—in *Bravo*, for example, "regulating the manner in which cigarettes are made available for sale" (a vending machine). (*Bravo, supra*, 16 Cal.App.4th at p. 412, italics added.) Here, the Ordinance does not regulate merely "the manner" in which cigarettes are sold, but regulates the sale of cigarettes to minors, as does Penal Code section 308.

It must be pointed out, however, that the ordinance in *Bravo* actually prohibited the business there from being conducted *at all*, because the ordinance banned Bravo Vending from conducting its business of cigarette vending machines within the city; arguably, this is more than regulating merely the *manner of operating* a business. (*Bravo, supra*, 16 Cal.App.4th at pp. 391, 413.) *Bravo* danced around this point by stating: "The business being regulated by the ordinance is the business of selling cigarettes. Anyone engaged in that business is free to continue to do so, so long as they do so in a permissible manner, i.e., through a live salesperson as opposed to a machine." (*Id.* at p. 413.) Under this reasoning, the Ordinance before us must be on that dance card as well: The business being regulated by the Ordinance is the business of selling cigarettes; anyone engaged in that business is free to continue to do so in a permissible manner, i.e., by not selling to minors.

But as *Bravo* also concluded, back in favor of preemption here, "the regulatory field preempted by [Penal Code] section 308 is that of the penal—i.e., both criminally and *civilly* proscribed—aspects of the sale of cigarettes to minors: To whom is it illegal to sell cigarettes, and what are the penal consequences of doing so?" (*Bravo, supra,* 16 Cal.App.4th at p. 403, italics added.) Under the Ordinance, a single violation of selling cigarettes to a minor within a five-year period results in the retailer's local license to sell cigarettes being suspended for 30 days; a second violation results in a 90-day suspension; a third violation within that fairly lengthy period results in a one-year suspension; and a fourth violation within that period results in license revocation. These are pretty stiff proscriptions. (Cf. Bus. & Prof. Code, § 22974.8, subd. (b) [State Bd. of Equalization administrative penalties for violating Pen. Code, § 308, or the STAKE Act (Bus. & Prof. Code, § 22950 et seq.), set forth in the state Licensing Act of 2003 (*id.,* § 22970 et seq.)].) The word "penal" may extend to the " 'tak[ing] away or impair[ment] [of a] privilege.' " (Black's Law Dict. (8th ed. 2004) p. 1168, col. 1 [defining "penal"], quoting Lile et al., Brief Making and the Use of Law Books (3d ed. 1914) p. 344.)

Luckily for us, we do not have to rely solely on *Bravo* in deciding whether the Ordinance is preempted. The STAKE Act and the state Licensing Act of 2003 were both enacted after *Bravo,* and they both provide, especially the state Licensing Act, further guidance on the preemption issue involving the Ordinance. We turn to those two statutes now.

## 2. *The STAKE Act.*

As noted, the STAKE Act, while not having a general preemption provision, recognizes that a city or county may be an "[e]nforcing agency" under the act; such localities may license retailers who sell tobacco; and such localities may conduct inspections and assess the civil penalties specified under the act. (§§ 22950.5, subd. (b), 22951, 22957, 22958; see also § 22962, subd. (e) [noting that the STAKE Act does not preempt local standards that impose greater restrictions on access to certain tobacco products through self-service mechanisms].) The STAKE Act, then, recognizes that a city may play a vital role in regulating the sale of tobacco products, including through licensing.

## 3. *State Licensing Act of 2003.*

It is the state Licensing Act of 2003, though, that plays the pivotal role in deciding whether the Ordinance is preempted by state law. (§ 22970 et seq.) That act constitutes the latest legislative word on the subject. The

stated purpose of this 2003 act is to have the State of California license the tobacco distribution chain, including retailers, to "help stem the tide of untaxed distributions and illegal sales of cigarettes and tobacco products." (§ 22970.1, subds. (a), (d).) As to tobacco retailers, this act explicitly incorporates Penal Code section 308 and the STAKE Act, by setting forth administrative penalties that the State Board of Equalization may impose for violations of these two identified statutes. (§ 22974.8; see § 22971, subd. (a).) And against this backdrop comes the clincher, the general preemption provision of section 22971.3, stating: *"Nothing in this [act] preempts or supersedes any local* tobacco control law *other than* those related to the collection of state taxes. *Local licensing laws* may provide for the *suspension or revocation of the local license* for *any* violation of a *state* tobacco control law." (Italics added.)

## C. Conclusion

Applying these analyses of Penal Code section 308, the STAKE Act, and the state Licensing Act of 2003, to the state law preemption principles set forth in *O'Connell* leads us to conclude that the Ordinance is not preempted by state law. As *O'Connell* teaches, if otherwise valid local legislation conflicts with state law, it is preempted. (*O'Connell, supra*, 41 Cal.4th at p. 1067.) And a conflict exists if the local legislation duplicates, contradicts, or enters an area fully occupied by state law, either expressly or by implication. (*Ibid.*)

"A local ordinance *duplicates* state law when it is 'coextensive' with state law." (*O'Connell, supra*, 41 Cal.4th at p. 1067.) That is not the case here. Penal Code section 308, the STAKE Act, and the state Licensing Act of 2003, make it a criminal offense, or impose monetary fines or penalties, or suspend or revoke a state license, for selling tobacco products to minors. The Ordinance, by contrast, suspends or revokes a local tobacco retailer license for doing so, and the local suspension or revocation is based on different standards.

"A local ordinance *contradicts* state law when it is inimical to or cannot be reconciled with state law." (*O'Connell, supra*, 41 Cal.4th at p. 1068.) The Ordinance is not inimical to state law—it complements and supplements state law. And the Ordinance can be reconciled with state law through the principles set forth in *Bravo* and the preemption provision found in the state Licensing Act of 2003.

Finally, the Ordinance cannot be said to have entered *"a field fully occupied* by state law." (*O'Connell, supra*, 41 Cal.4th at p. 1068.) If the State

of California intended to fully occupy the field of tobacco retailing regulation, both the structure of the state Licensing Act of 2003 (in expressly incorporating Pen. Code, § 308 and the STAKE Act) and that act's wording (in its preemption provision) were certainly not the way to express or imply it. (Bus. & Prof. Code, §§ 22974.8, 22971.3.)

We conclude that the Ordinance is not preempted by state law.

## II. Hearsay Aspects of Administrative Hearing Did Not Deprive Prime of Due Process

Prime contends it was denied due process at the administrative hearing because the minor decoy did not appear there (as Prime had requested), and the minor's age was established through a birth certificate and a work permit (first introduced on the day of the hearing), as well as through the testimony of a code enforcement officer and a police officer who participated with the decoy in the sting operation involving Prime. We find no prejudicial due process violation.

As for the minor decoy's failure to appear, the constitutional right to confrontation is confined to criminal proceedings. (*In re Mary S.* (1986) 186 Cal.App.3d 414, 419 [230 Cal.Rptr. 726].) Nevertheless, in civil proceedings a party has a due process right to cross-examine and confront witnesses. (*Ibid.*) At the administrative hearing, Prime was afforded the opportunity to question the authenticity of the documents and to cross-examine the officers. Prime did cross-examine the police officer—who participated with the minor decoy in the Prime sting—with regard to whether the officer had confirmed the decoy's age.

As for the work permit and the birth certificate tendered at the hearing, Prime noted that prior to the hearing it had been given redacted work permits with typographical errors regarding the decoy's birthdate, and that it had not seen the birth certificate until the day of the hearing. But Prime did not object to these two documents being offered at the hearing. Furthermore, the birth certificate falls within the hearsay exception of Evidence Code section 1281 (records of vital statistics), and the work permit may be considered within the hearsay exception of Evidence Code section 1271 (a business record) if the officer(s) could be deemed a qualified witness thereto.

We find no prejudicial due process violation.

## DISPOSITION

The judgment is affirmed. City is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).) Any stay of the suspension is discharged.

Hull, Acting P. J., and Robie, J., concurred.

A petition for a rehearing was denied June 4, 2010, and appellant's petition for review by the Supreme Court was denied July 28, 2010, S183753. George, C. J., did not participate therein.