[Civ. No. 68132. Second Dist., Div. Two. Nov. 2, 1983.]

LUANA B. OHMER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THOMAS D. OHMER, Real Party in Interest.

COUNSEL

Leslie Ellen Shear and Lawrence Mark Stone for Petitioner.

No appearance for Respondent.

Simke, Chodos, Silberfeld & Soll and Marc H. Berry for Real Party in Interest.

OPINION

**BEACH, J.—**

NATURE OF PROCEEDING:

Petitioner, mother of child, seeks to restrain the trial court from proceeding with hearing upon an order to show cause obtained by the father of the child to modify prior child custody order.[1] Petitioner claims the trial court improperly denied her third request for continuance of the hearing and denied her the right of cross-examination of the trial court's custody investigator and of the trial court's panel psychiatrist. We deny the petition and discharge the alternative writ.

PROCEDURAL BACKGROUND:

On August 31, 1982, father of child petitioned for an order to show cause.[2] The matter was set for hearing in September 1982. The matter was not heard but instead referred to the conciliation court where on September 28, 1982, the matter was by stipulation of the parties referred to the psychiatrist for his evaluation and report and by subsequent stipulation submitted to the custody investigator for the court for investigation and report. The matter eventually came before the trial court for hearing on the order to show cause on March 8, 1983, some seven months after the father's petition therefor. On that date, the mother, petitioner here, moved to postpone hearing to a later date. Her motion was denied and the hearing proceeded over a period of some few days somewhat broken up primarily by

---

[1] Father sought other relief by an order to show cause but child custody was the important issue.

[2] The original dissolution order was made and entered in 1977 and involved a disposition of community property as well as custody and support of the minor children. The parties have been fussing about the terms and enforcement of the order and its several subsequent modifications ever since.

petitioner's numerous motions made in an effort to halt the hearing and made upon a variety of grounds.

Petitioner's prior petition for the same relief now being sought was, by our order of March 14, 1983, denied. Accordingly, the hearing in the trial court proceeded on forward to March 21, 1983. On that date, and upon stipulation of the parties, the trial court continued the matter for further trial of the order to show cause to April 7, "for further hearing on all issues." But before that date arrived, petitioner, on March 24, 1983, filed her petition for hearing before the California Supreme Court, which, by its order of April 1, 1983, stayed further hearing by the trial court and, by its subsequent order of May 9, 1983, retransferred the matter to this court and this division with directions to issue an alternative writ and to hear the matter and continued the stay of all proceedings until final determination of the instant petition.[3] Obedient thereto, we accordingly issued the alternative writ and heard the matter.

PETITIONER'S CONTENTIONS:

The primary thrust of petitioner's several arguments and assertions is that because this matter relates to child custody, higher-than-usual due process requirements drastically limited the trial court in the exercise of its discretion and required the trial court to grant her several motions aimed at preventing the hearing upon the order to show cause from taking place. She relies on language in *Santosky* v. *Kramer* (1982) 455 U.S. 745 [71 L.Ed.2d 599, 102 S.Ct. 1388]. In her claim of right to cross-examine the investigators, she relies also on *McLaughlin* v. *Superior Court* (1983) 140 Cal.App.3d 473 [189 Cal.Rptr. 479]. Her claim of trial court error here is unsupported by law or by the record.

DISCUSSION:

1. *Due Process—Requirements Generally*

There is no quarrel with the general proposition that the parent-child relation is one more important and fundamental to many, than life itself. **(1)** Accordingly, in cases of its severance by the state due process commands a higher degree of procedural care than in other cases. (*Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18 [68 L.Ed.2d 640, 101 S.Ct. 2153]; *Santosky* v. *Kramer, supra,* 455 U.S. 745.)

---

[3]The Supreme Court's orders refer to no case, statute or reason for the retransfer.

But even the Supreme Court of the United States has had great difficulty and serious dissension in defining the nature of and precisely what is required by this higher standard of "due process." Thus, in *Lassiter, supra,* 452 U.S. 18, it held that in proceedings brought by the state to terminate parental rights, the state was not required to provide counsel to an indigent parent. On the other hand, in an identical kind of case (parental termination by the state), *Santosky* v. *Kramer, supra,* 455 U.S. 745, it held that due process required the "clear and convincing" standard of proof rather than the usual "fair preponderance" required in other ordinary civil cases.

Nonetheless, one thing is apparent from these and earlier United States Supreme Court decisions on procedural due process: due process standards are not fixed and precise, nor do they compel the action which petitioner at bench claims the trial court should have taken, i.e., (1) continuance of the hearing for preparation and (2) prevention of the use of the investigative reports unless cross-examination of the investigators be allowed.

■ In *Mathews* v. *Eldridge* (1976) 424 U.S. 319 [47 L.Ed.2d 18, 96 S.Ct. 893] the court said: "These decisions underscore the truism that '"[d]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' [Citation.] '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' [Citation.] Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. [Citations.] More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]" (*Id.* at pp. 334-335 [47 L.Ed.2d at p. 33].)

This identification process was reiterated and followed by the court in *Lassiter* and *Santosky.* In the latter it said: "In parental rights termination proceedings, the private interest affected is commanding; the risk of error from using a preponderance standard is substantial; and the countervailing governmental interest favoring that standard is comparatively slight." (*Santosky* v. *Kramer, supra,* 455 U.S. 745, 758 [71 L.Ed.2d 599, 609].)

It is immediately apparent that the holding of *Santosky* is inapplicable here. First, of all the affected private interest or right of petitioner is far

less fundamental. This is not a case of the *state* depriving a parent of its child or severing the parental-child relation. But even assuming that the standards of due process and of delicate balancing involved in *Santosky* and *Lassiter* were applicable here, our decision here for additional reasons we explain below, would be the same. Except for the issue of denial cross-examination which has merit, the other issues raised by petitioner are now moot or unimportant. We will discuss the cross-examination issue last.

### 2. *The Continuance*

The primary, although not exclusive, purpose of the many motions of petitioner, was to delay hearing for the alleged purpose of allowing her attorneys time to familiarize themselves and better prepare to represent petitioner. But, as indicated, the need for additional time is apparently now no problem and hence moot. We, therefore, deal only briefly in explaining why the trial court did not err in refusing further continuances and delays in setting the matter for hearing on March 8 and continuing the hearing to April 7.

█ A motion for a continuance is addressed to the sound discretion of the trial court whose decision will be reversed on appeal or interfered with by writ process only if it was capricious, arbitrary or partial or exceeded the bounds of reason or would prevent a fair trial from being held. (*Schlothan* v. *Rusalem* (1953) 41 Cal.2d 414 [260 P.2d 68]; *Dingwall* v. *Anderson* (1969) 271 Cal.App.2d 658 [76 Cal.Rptr. 827]; *Gibson* v. *Cobb* (1965) 236 Cal.App.2d 226 [46 Cal.Rptr. 57].) Nothing in any of the cited cases presented by petitioner has limited this discretion of the trial court. It has the same discretion in order to show cause matters involving custody of children and its authority is not diminished by the nature of the child custody proceeding.

At bench the case involved the welfare of a child. It required proceeding with reasonable dispatch. The father too had parental rights equal to those of the mother. They included having the child with him also at reasonable times and places, to protect the child and to promote the welfare of the child.[4] The matter involved a modification of an earlier custody order. It would not have resulted in an irretrievable severance of the parental relationship.

At bench the child is not being taken by the state. Thus, petitioner's reliance on *Santosky* as demanding greater privileges to petitioner is mis-

---

[4] The father has been denied *his* right to a speedy and reasonable consideration of his cause by our Supreme Court's stay order, and by the retransfer of the matter, commanding the alternative writ and further hearing thereafter.

placed. Petitioner had ample time, for nearly seven months, to prepare her case. She had two previous lawyers. Last minute change of counsel is insufficient reason to honor her late demands for continuance. Petitioner had ample time and opportunity earlier to employ counsel. Such opportunity and access to counsel are to be weighed against late claim of needed change of or even the *right* to counsel. (See *Lassiter* v. *Department of Social Services, supra,* 452 U.S. 18, 22 [68 L.Ed.2d 640, 646].) The trial court had previously granted continuances to petitioner. There is absolutely no evidence showing an abuse of discretion.

The father's petition alleged the needs of the child; a 12-year-old girl weighing only 65 to 70 pounds; in custody of but not being taken care of by an alcoholic mother; the mother was uncooperative in the performance of several parts of a previous order of the court; she frequently left her child alone. All these were allegations by the father properly presented to the trial court. The allegations were sufficient. Many of them are unrefuted and at least created a sufficient enough showing and presentation to the trial court which justified reasonable alacrity in hearing. The trial court did not act precipitously or rashly. Petitioner had an opportunity to prepare to refute these allegations.

There was and is no support whatever in the record for the statement by petitioner before this court and the Supreme Court that petitioner had been "abandoned" by her prior counsel. She voluntarily substituted herself in pro per in place of her former attorney and had retained him to replace an even earlier attorney. The prima facie case for the issuance of an order to show cause and for having the hearing held reasonably soon was amply made by the statements of the child's father. It demonstrated and established a garden-variety-type of custody hearing and did not involve the much more serious matter of permanently depriving anyone of his or her child.

### 3. *Lack of Support for Requested Attorney Fees*

Petitioner argues that the father's request for fees is not adequately supported by proper financial declarations before the trial court. This matter is truly a red herring and does not belong here in the Court of Appeal or the Supreme Court on a petition for an extraordinary writ to stop the proceedings in an order to show cause case such as at bench. Any inadequacy of the showing made by the father for attorney fees can be and could have been easily handled by the trial court. It simply could deny the request or permit curing of the defect at the hearing. It does not require a dismissal of the order to show cause hearing. It is not an important question of law which should be before a reviewing court on an application such as this. The trial

court has ample authority and procedural methods by which to handle this deficiency if it be a deficiency.

### 4. *The Background of the Investigator*

Petitioner contends the trial court erred in failing to take judicial notice of the investigator's inadequate training to allow her to make a custody investigation and report. This attack is a make weight. The investigator has 20 years of experience in thousands of cases. Petitioner pointed only to the fact that the investigator received a college degree in geology. Petitioner did not point to the more important feature of the 20 years of experience. If petitioner's counsel did not know of this experience, she should have made certain before she made this discrediting attack designed to do nothing but to mislead the trial court, this court and the Supreme Court into thinking there was something to this charge. Petitioner's counsel should have been more truthful with the courts. She should avoid giving but partial representations calculated to mislead the court.[5]

### 5. *The Denial of Cross-Examination*

We turn to what we consider to be the only important and substantial issue. ■ That issue is: may the trial court, as a condition to the use of its assigned or appointed personnel, such as investigators and psychiatrists from a panel approved by it, preclude cross-examination of the investigating officer or psychiatrist? The answer is "yes, it may."

Relying upon *McLaughlin* v. *Superior Court, supra,* 140 Cal.App.3d 473, petitioner alleges that such procedure denies her due process. Again, her reliance upon case law is misplaced. In *McLaughlin* the appellate court was considering the local policy of a *mandatory* reference to the court mediator pursuant to the statute Civil Code section 4607. Civil Code section 4607 requires prehearing mediation of child custody and visitation disputes in marital dissolution proceedings conducted pursuant to the Family Law Act. Pursuant to that provision, respondent Superior Court in *McLaughlin* had adopted a local court rule or policy which required the mediator to make recommendations to the court if the parties failed to agree in the mediation proceedings but prohibited cross-examination of the mediator by the parties. The assignment of the case to the mediator was mandatory under the policy there adopted. *McLaughlin* simply held that the policy as then practiced was unconstitutionally invalid because it was *mandatory* and prohibited cross-examination.

---

[5]This was a tactic unworthy of counsel, whose work and briefing here and in nearly all other respects is excellent and an enthusiastic representation of her client.

Unlike *McLaughlin* the policy at bench is not mandatory. The parties avail themselves of it at their option. The opinion and decision in *McLaughlin* concluded that the mediation proceedings there established by the court could continue and the mediator could make a recommendation to the court only if the parties were guaranteed—or waived—the right to cross-examine the mediator and other rights essential to due process.

At bench the proceedings are available on a voluntary basis. The parties both stipulated to the referral to the custody investigator and the court panel psychiatrist. The right to cross-examine was *expressly waived* by petitioner.

In this matter the court makes available to the parties involved in custody disputes the services of a court-appointed custody investigator and of a psychiatrist from a panel of approved psychiatrists. Parties to a dispute may have the matter referred to the investigator and or the psychiatrist. The parties sign a form stipulation adopted by the court. The forms provide for reference to the custody investigator (or to the psychiatrist) and for his report to the court. The forms contain an express waiver of the right to call the investigator, or the psychiatrist, as a witness.

The record discloses no support for mother's claim that her agreement to utilize the court's process of reference to a custody investigator and waiving of the cross-examination was without benefit of counsel. True, she was at one point in these protracted proceedings temporarily without counsel when at an earlier date she signed a form and therein consented to the use of the court panel psychiatrist and also therein expressly waived the right to call the psychiatrist as a witness or to cross-examine him. But thereafter, when she in fact had new counsel to represent her, petitioner confirmed that first waiver and in addition signed a second form stipulation to refer the case to the custody investigator. As a part of the second written stipulation therein reached, petitioner expressly waived the right to call the custody investigator as a witness. The father at petitioner's request also signed the second stipulation.

The holding of *McLaughlin* unequivocally provides that such right of cross-examination may be waived. A person is free to waive any or all procedures required and designed to safeguard fundamental rights. This is true even in cases severing the parent-child relationship. (*Hall* v. *Department of Adoptions* (1975) 47 Cal.App.3d 898 [121 Cal.Rptr. 223].)

Again, examining the matter at bench in the light of the three considerations mentioned in *Mathews, Lassiter* and *Santosky,* the use of the stipulation and waiver of the right to call or examine the investigating persons making reports to the court does no violence to due process. First, the

"interest at stake" relates to child custody. But the parental relation is not severed or irretrievably harmed. Parties fearful that such investigator may be inexperienced, inaccurate or unable to discern special problems peculiar to their case need not accept the service. They are free to supplement or to substitute entirely their own retained experts, such as doctors, social workers, teachers, nurses and other witnesses.

Second, the State's interest is manifold. The procedure is not compulsory but is an effort to help these and other litigants. It affords parties in custody proceedings access to relatively less expensive specialists in this troublesome area of child custody. It avoids the inevitable and proverbial "battle of the experts" privately retained by parties. The public's interest lies further in the resolution of the matters affecting the welfare of children with reasonable alacrity and dispatch, yet with a minimum of rancor and bitterness. The court's use of this procedure is not without consideration of the fundamental rights of parents but is an effort to meet the needs of parents who cannot agree between themselves and at the same time meet the needs of many other litigants who are equally entitled to the access of the courts. The court must make its limited resources of time, personnel and facilities available to many.

The procedure and policy of eliminating cross-examination of the custody investigator and the court's appointed psychiatrist is a reasonable effort to accomplish this purpose.

Third, the risk of irretrievable harm in a child custody and visitation case is clearly not as great as in a case involving the permanent termination of parental rights.

The petition is denied and the alternative writ is discharged.

Roth, P. J., and Compton, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied January 6, 1984.