[No. B101481. Second Dist., Div. Five. Dec. 9, 1996.]

WILLIAM P. HOGOBOOM et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

COUNSEL

Harriett Buhai Center for Family Law, Betty L. Nordwind, Julia Y. Rueschemeyer, Horvitz & Levy, David S. Ettinger and Elizabeth Skorcz Anthony for Petitioners.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

Retired Los Angeles Superior Court Judges William P. Hogoboom, Christian E. Markey, Jr., and Lester E. Olson, three of California's most distinguished jurists, have filed an original petition for writ of mandate[1] to compel the respondent court to set aside a $110 per party "Family Law Mediation Fee." The fee is charged in family law and domestic violence matters. We conclude: The Legislature has so fully covered by general law matters relating to fees for family law and domestic violence mediation occurring in conciliation court that it must be considered a matter of state concern; as a result, the Legislature has preempted the right of a superior court to charge fees for family law and domestic violence mediation other than those specifically enumerated by statewide statute; apart from preemption considerations, utilizing traditional rules of statutory interpretation, the fee is violative of Government Code section 68070, subdivision (a)(1);[2] the fee in question is not authorized by Family Code section 3163; and hence, it may not be assessed by the respondent court. As a result, we issue our peremptory writ of mandate enjoining the respondent court from collecting the mediation fee.

## II. PROCEDURAL HISTORY

Effective March 1, 1996, the respondent court adopted Superior Court of Los Angeles County Rules, rule 14.4.1 (local rule 14.4.1), which states:

---

[1]Pursuant to article VI, section 10 of the California Constitution, we have jurisdiction to consider the original petition even though relief was not sought in the respondent court. (*Brosnahan* v. *Brown* (1982) 32 Cal.3d 236, 241 [186 Cal.Rptr. 30, 651 P.2d 274]; *Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 808 [114 Cal.Rptr. 577, 523 P.2d 617].) The parties do not dispute that retired Judges Hogoboom, Markey, and Olson have standing to bring this petition.

[2]Unless otherwise indicated, all future statutory references are to the Government Code.

"The court shall assess a fee for providing Family Law Mediation. The fee shall be equally apportioned between the parties insofar as it may be equitable to do so. The total fee may be assigned as costs to one side or the other at the end of the case as the judge may deem proper." A document entitled "NOTICE TO ATTORNEYS" issued prior to the effective date of local rule 14.4.1 indicated the "Family Law Mediation Fee" would be $110 per party. The notice further stated: "Flat fee per party to be assessed when case is referred to Family Law Mediation. If the mediation case is subsequently reopened, as the result of an Order To Show Cause re: Modification, the fee is again assessed. The fee will be assessed for all cases, including Domestic Violence cases, deemed suitable for mediation." A form entitled "NOTICE TO PARTIES" provided to all family law litigants stated: "Parties can pay this fee at the Filing Window at the time of filing their documents or any time prior to their mediation appointment. An application can be made to the court where the case is assigned to waive the fee. When the fee is paid, this notice will be validated and the receipt will be attached. The validated notice and receipt will serve as verification of payment and must be presented at the time of the mediation appointment. If there is no proof of payment or a court order waiving the fee, the mediation will not take place."

Retired Judges Hogoboom, Markey, and Olson filed a mandate petition challenging local rule 14.4.1. We summarily denied the petition. The California Supreme Court granted review and directed us to issue an order to show cause. We issued an order to show cause and held oral argument. We now issue our peremptory writ of mandate.

### III. DISCUSSION

### A. *Preemption*

### 1. *Principles of preemption*

■ Retired Judges Hogoboom, Markey, and Olson argue that the state has preempted the field of imposition of fees. ■ The California Supreme Court synopsized the test for determining whether a local entity's power to act has been preempted in *Sherwin-Williams Co.* v. *City of Los Angeles* (1993) 4 Cal.4th 893, 897-898 [16 Cal.Rptr.2d 215, 844 P.2d 534] as follows: " 'If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.' [Citations.] [¶] 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' [Citations.] [¶] Local legislation is 'duplicative' of general law when it is coextensive therewith. [Citation.] [¶] Similarly, local legislation is 'contradictory' to

general law when it is inimical thereto. [Citation.] [¶] Finally, local legislation enters an area that is 'fully occupied' by general law when the Legislature has expressly manifested its intent to 'fully occupy' the area [citation], or when it has impliedly done so in light of one of the following indicia of intent: '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the' locality [citations]." (See, e.g., *IT Corp.* v. *Solano County Bd. of Supervisors* (1991) 1 Cal.4th 81, 85-102 [2 Cal.Rptr.2d 513, 820 P.2d 1023] [no preemption of long-standing local authority to regulate hazardous waste storage]; *Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 426 [261 Cal.Rptr. 384, 777 P.2d 157] [Tanner Act (Health & Saf. Code, §§ 39650-39674) does not prohibit local air pollution districts from interim regulation of non-vehicular emissions until action by the State Air Resources Board]; *Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 290-302 [219 Cal.Rptr. 467, 707 P.2d 840] [San Francisco's ordinances regulating escort services not preempted by statewide laws regulating sexual conduct]; *Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 881-888 [218 Cal.Rptr. 303, 705 P.2d 876] [no preemption of right of local school districts to impose school impact fees to finance specified temporary facilities]; *People* ex rel. *Deukmejian* v. *County of Mendocino* (1984) 36 Cal.3d 476, 484-488 [204 Cal.Rptr. 897, 683 P.2d 1150] [no preemption of local regulations concerning pesticide use]; *Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 808-810 [100 Cal.Rptr. 609, 494 P.2d 681] [local massage ordinance preempted by statewide regulation of criminal sexual activity]; *In re Hubbard* (1964) 62 Cal.2d 119, 122-128 [41 Cal.Rptr. 393, 396 P.2d 809], disapproved on another point in *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 63, fn. 6 [81 Cal.Rptr. 465, 460 P.2d 137] [state-wide laws concerning "games of chance" did not preempt City of Long Beach prohibition against panguingui].)

█ In evaluating whether there has been preemption, the California Supreme Court has held, "In determining whether the Legislature has preempted by implication to the exclusion of local regulation we must look to the whole purpose and scope of the legislative scheme." (*People* ex rel. *Deukmejian* v. *County of Mendocino, supra*, 36 Cal.3d at pp. 485-488; *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 859 [76 Cal.Rptr. 642, 452 P.2d 930]; *In re Lane* (1962) 58 Cal.2d 99, 102-103 [22 Cal.Rptr. 857, 372

P.2d 897]; *Tolman* v. *Underhill* (1952) 39 Cal.2d 708, 712 [249 P.2d 280].) On another occasion, the California Supreme Court held the "[e]xamination of 'the whole purpose and scope of the legislative scheme' " was necessitated in a determination as to whether preemption had occurred. (*IT Corp.* v. *Solano County Bd. of Supervisors, supra,* 1 Cal.4th at p. 95.) In evaluating whether preemption has occurred, an appellate court is not confined in ascertaining legislative intent to solely examining the language used in the relevant statutes. (*In re Loretizo* (1963) 59 Cal.2d 445, 446 [30 Cal.Rptr. 16, 380 P.2d 656]; *In re Lane, supra,* 58 Cal.2d at p. 103; *Chavez* v. *Sargent* (1959) 52 Cal.2d 162, 176, fn. 6 [339 P.2d 801], disapproved on another point in *Petri Cleaners, Inc.* v. *Automotive Employees, etc., Local No. 88* (1960) 53 Cal.2d 455, 475 [2 Cal.Rptr. 470, 349 P.2d 76]; *Tolman* v. *Underhill, supra,* 39 Cal.2d at p. 712.) In *Bishop* v. *City of San Jose, supra,* 1 Cal.3d at page 63, the Supreme Court held: "In exercising the judicial function of deciding whether a matter is a municipal affair or of statewide concern, the courts will of course give great weight to the purpose of the Legislature in enacting general laws which disclose an intent to preempt the field to the exclusion of local regulation (see *Ex parte Daniels* (1920) 183 Cal. 636, 639-640 . . .), and it may well occur that in some cases the factors which influenced the Legislature to adopt the general laws may likewise lead the courts to the conclusion that the matter is of statewide rather than merely local concern. However, the fact, standing alone, that the Legislature has attempted to deal with a particular subject on a statewide basis is not determinative of the issue as between state and municipal affairs . . . ."

 Retired Judges Hogoboom, Markey, and Olson argue that there has been preemption by the Legislature of the right of trial courts to impose fees for conciliation court mediation by means of a local court rule. They argue there are four areas of law which demonstrate trial court authority to impose a family law and domestic violence mediation fee pursuant to a local rule has been preempted. In support of their position, retired Judges Hogoboom, Markey, and Olson cite to section 68070, subdivision (a)(1), section 26820 et seq., section 54985, and the conciliation court provisions of Family Code section 1800 et seq. For purposes of clarity and understanding, we set forth those provisions of law with appropriate detail. Further, where it is appropriate to do so, we set forth the historical development of these statutes insofar as it reveals the purpose and scope of the legislative scheme and the factors which influenced the Legislature to act as it did. (*IT Corp.* v. *Solano County Bd. of Supervisors, supra,* 1 Cal.4th at p. 95; *Bishop* v. *City of San Jose, supra,* 1 Cal.3d at p. 63.)

### 2. *Section 68070, subdivision (a)(1)*

Section 68070, subdivision (a)(1) provides: "(a) Every court may make rules for its own government and the government of its officers not inconsistent with law or with the rules adopted and prescribed by the Judicial

Council. These rules shall not: [¶] (1) Impose any tax, charge, or penalty upon any legal proceeding, or for filing any pleading allowed by law." It is appropriate to review the historical development of section 68070, subdivision (a)(1) in order to understand the purpose and scope of the legislative scheme. The initial historical basis of present section 68070, subdivision (a)(1) was the "Act to regulate proceedings in Civil Cases, in the Courts of Justice of this state" passed on May 1, 1851, in the second session of the Legislature. Section 643 of the act provided that the Supreme Court was to adopt rules as follows, "The Supreme Court may make rules not inconsistent with the Constitution and laws of the State, for its own government, and the government of the District Courts, and the Superior Court of the City of San Francisco; but such rules shall not be in force until thirty days after their adoption and publication." (Stats. 1851, ch. 5, § 643, p. 152.) In 1863, the Legislature adopted "An Act concerning the Courts of Justice of this State, and Judicial Officers." The 1863 act reiterated the Supreme Court's power to adopt rules "not inconsistent with the Constitution and laws of the State . . . ." (Stats. 1863, ch. II, § 13, p. 335.) On March 31, 1870, the Governor signed "An Act to establish a Municipal Criminal Court in the City and County of San Francisco." Unlike other jurisdictions within the state, the San Francisco Municipal Court had the authority to make its own rules, so long as they were "not inconsistent with the laws of the State . . . ." (Stats. 1870, ch. CCCLXXXIV, § 7, p. 529.)

In 1870, the California Code Commission was appointed to draft a complete system of laws for presentation to the Legislature. (See Stats. 1870, ch. 516, § 2, p. 774; *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 629 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; *People* v. *Sekona* (1994) 27 Cal.App.4th 443, 455 [32 Cal.Rptr.2d 606].) Until the adoption of the Code of Civil Procedure in 1872, no statutory enactment addressed the power of any court to assess a fee under its rule making power. In section 129 of the new Code of Civil Procedure, the Legislature permitted every court of record to make its own rules consistent with state law but prohibited the imposition of a fee on any "legal proceeding." The new section 129 stated in relevant part, "Every court of record may make rules, not inconsistent with the laws of this State, for its own government and the government of its officers; but such rules must neither impose a tax or charge upon any legal proceeding . . . ." (1 Ann. Code Civ. Proc., § 129 (1st ed. 1872, Haymond & Burch, comrs.) p. 109.) The code commissioners comment to section 129 indicated it was derived from the aforementioned 1863 and 1870 acts. (See code comrs. note foll. 1 Ann. Code Civ. Proc., § 129, *supra*, p. 109.) In 1913, former Code of Civil Procedure section 129 was amended to prohibit the imposition of "any tax, charge or penalty upon any legal proceeding . . . ." (Stats. 1913, ch. 85, § 1, p. 90.) In 1933, Code of Civil Procedure section

129 was amended to allow the Judicial Council to promulgate court rules, but the language prohibiting the imposition of "any tax, charge, or penalty upon any legal proceeding . . ." remained intact. (Stats. 1933, ch. 743, § 32, pp. 1823-1824.) One of the stated purposes of the 1933 legislation was to increase the uniformity of rules of practice and procedure in the trial courts. (Cal. Code Com., Rep., Explanation and Cross-References Tables of Certain Proposed Amendments to the Code of Civil Procedure (1933) p. 6.) Subsequent amendments to former Code of Civil Procedure section 129 did not change the language prohibiting the use of rule making power to impose "any tax, charge or penalty upon any legal proceeding . . ." (Stats. 1949, ch. 1471, § 1, p. 2562.) In 1953, former Code of Civil Procedure section 129 was repealed and the language including that prohibiting the use of the rule making power to impose "any tax, charge or penalty upon any legal proceeding . . ." was reenacted as section 68070. Subsequent amendments in 1977 and 1993 have not altered that language. (Stats. 1993, ch. 925; Stats. 1977, ch. 1257, § 48, p. 4771.) Simply stated, since 1872, the California Legislature has repeatedly amended and reenacted former Code of Civil Procedure section 129 and later present section 68070 to prohibit the use of the local court rule making power to impose "any . . . charge . . . upon any legal proceeding . . . ."

### 3. *Section 26820 et seq.*

In further support of their contention that the power to impose the $110 per party fee for family law mediation has been preempted by statewide law, retired Judges Hogoboom, Markey, and Olson cite to the state statutory scheme for imposing court fees found in title 3, article 2 of the Government Code, which is entitled "County Clerk; Fees." Section 26820 states: "The county clerk shall charge and collect the fees fixed in this article for service performed by him, when not otherwise provided by law." The comprehensive listing of fees in the portions of article 2 that follow section 26820 cover many aspects of the litigation and post-judgment process. The allowable charges that may be assessed by the county clerk include fees for: filing the first paper in litigation (§ 26820.4); the Judge's Retirement Fund (§ 26822.3); change of venue (§ 26823); filing notices of appeal from the municipal court (§ 26824); filing the first paper on behalf of a defendant (§ 26826); rehabilitation of Riverside County court facilities (§ 26826.1); conciliation court costs in Riverside County (§ 26826.2); filing first papers in probate proceedings (§ 26827); preparing orders in Los Angeles County in probate proceedings (§ 26827.1); filing subsequent papers in probate proceedings (§ 26827.4); storage of estate planning documents (§ 26827.6); searching for estate planning documents (§ 26827.7); issuing various writs (§ 26828); issuing an order of sale (§ 26829); filing a motion (§ 26830);

costs of preparing copies of documents (§ 26831); certified copies of marital dissolution decrees (§ 26832); certifying documents (§ 26833); issuing an abstract of judgment (§ 26834); authenticating documents (§ 26835); authenticating other certificates (§ 26836); comparing papers (§ 26837); certificates issued in connection with an appeal (§ 26838); exemplification of a document (§ 26839); issuing a marriage license (§ 26840); issuing a marriage certificate (§ 26840.1); issuing marriage licenses outside normal business hours (§ 26840.2); conciliation court expenses only after action by the board of supervisors by charging additional sums for issuing marriage licenses and certificates (§ 26840.3); additional sums for the filing of a marital dissolution petition in Napa and Shasta Counties to defray conciliation court costs (§ 26840.4); additional sums payable for marriage licenses (§ 26840.7); authorization to conduct weddings (§ 26840.8); protective order filings (§ 26841); making a record of a certificate of reviver (§ 26847); filing, canceling, revoking or withdrawing a notary bond (§ 26849.1); filing and indexing other papers (§ 26850); recording other licenses (§ 26851); issuance of a certificate to official capacity of public official (§ 26852); taking an affidavit (§ 26853); searching records (§ 26854); taking an acknowledgment (§ 26855); filing documents relevant to a power of attorney (§ 26855.1); filing the financial statement of an admitted insurer (§ 26855.2); issuing a document stating whether an insurer's certificate of authority has been surrendered or revoked (§ 26855.3); filing a dissolution of marriage petition (§ 26859); performing a marriage (§ 26861); filing a motion or order to show cause in a child custody matter (§ 26862); and additional sums in civil actions to defray automation costs. (§ 26863.) Further, article 2 places limits on when fees may be charged. (§§ 26827.5 [when a specified public official is the administrator, fees payable out of estate], 26827.6 [reduction of storage fees for estate planning documents], 26833.5 [prohibition from charging indigents for specified marital dissolution documents], 26856 [prohibition from charging additional fees], 26858 [prohibition from charging filing fees in pension matters].)

Apart from the virtually complete coverage of the litigation process of the aforementioned legislatively adopted fee schedule, certain of the provisions evidence a legislative intention to limit allowable charges for purposes of defraying conciliation court expenses to the specified matters. Section 26826.2[3] permits the Riverside County Board of Supervisors to enact a $50 surcharge on any first papers or motions in family law proceedings to defray

[3]Section 26826.2 states: "In addition to the total filing fee authorized pursuant to Section 26820.4 or 26826 or any other fee authorized by this code, after giving notice and holding a public hearing on the proposal, the Board of Supervisors of Riverside County may impose a surcharge not to exceed fifty dollars ($50) for the filing in superior court of (a) a petition for dissolution of marriage, legal separation, or nullity of a marriage, (b) a response to such a petition, or (c) any motion, order to show cause, or other proceeding seeking to modify or

conciliation court expenses. Similarly, section 26840.4[4] allows a surcharge in Napa and Shasta Counties to exclusively defray conciliation court costs. Additionally, pursuant to section 26840.3,[5] all counties, including Los Angeles County, may, upon approval of the board of supervisors, impose additional fees in connection with issuance of marriage licenses and certificates for purposes of funding mediation and the conciliation court. Finally, section 26862[6] allows a $15 filing fee in specified child custody matters. This fee is to be used to pay for conciliation court services. To sum up, the Legislature has permitted the imposition of additional costs on parties for purposes of funding conciliation court services under the following circumstances: in the counties of Napa, Shasta, and Riverside; statewide on persons seeking marriage licenses and certificates when approved by the county board of supervisors; and in all counties with a conciliation court in the sum

---

enforce any judgment or order which orders or awards custody of minor children or specifies rights of visitation. The surcharge shall be in an amount determined to be necessary by the board of supervisors to cover the costs of constructing, maintaining, or operating the conciliation court, including maintaining a secure waiting area for minor children ordered brought before the court, as well as enhancing or expanding the services of, or facilities for, the conciliation court. The board of supervisors shall annually review the requirements of the court and shall adjust the amount of the surcharge to cover only those requirements determined to be necessary."

[4]Section 26840.4 provides: "As an alternative to the procedure in paragraph (1) of subdivision (a) of Section 26840.3, the Board of Supervisors of Napa or Shasta County may impose a fee for the filing of a petition for dissolution of a marriage, a petition for legal separation, or a petition for nullity of a marriage, which, when added to the additional fees, if any, collected pursuant to paragraphs (2) and (3) of subdivision (a) of Section 26840.3, is sufficient to cover the costs of operation of the conciliation court. However, no fee adopted pursuant to this subdivision shall exceed the fee charged on January 1, 1978, by more than sixty dollars ($60). [¶] The funds shall be paid to the county treasury and shall be used exclusively to pay the costs of maintaining the conciliation court."

[5]Section 26840.3 states; "(a) The superior court in any county may, for the support of the family conciliation court or for conciliation and mediation services provided pursuant to Chapter 11 (commencing with Section 3160) of Part 2 of Division 8 of the Family Code, upon action of the board of supervisors to provide all space costs and indirect overhead costs from other sources, increase: [¶] (1) The fee for issuing a marriage license, by an amount not to exceed five dollars ($5). [¶] (2) The fee for issuing a marriage certificate pursuant to Part 4 (commencing with Section 500) of Division 3 of the Family Code, by an amount not to exceed five dollars ($5). [¶] (b) The funds shall be paid to the county treasury and an amount equal thereto shall be used exclusively to pay the costs of maintaining the family conciliation court or conciliation and mediation services provided pursuant to Chapter 11 (commencing with Section 3160) of Part 2 of Division 8 of the Family Code."

[6]Section 26862 states: "In any county in which there is a family conciliation court, or in which counties have by contract established joint family conciliation court services, a fee of fifteen dollars ($15) shall be paid to the county clerk at the time of filing a motion, order to show cause, or other proceeding seeking to modify or enforce that portion of any judgment or order entered in this state or any other state which orders or awards the custody of a minor child or children or which specifies the rights of any party to the proceeding to visitation of a minor child or children. The funds shall be paid to the county treasury and shall be used exclusively to pay the costs of maintaining the family conciliation court."

of only $15.[7] The Legislature has not authorized the respondent court to impose the $110 per party mediation fee.

It is appropriate to examine the lengthy historical basis of section 26820. The initial enactment by the Legislature which regulated fees charged by the courts was the April 22, 1850, "Act to regulate Fees of Office" which set forth the allowable charges that could be imposed in specified counties by: the Clerk of the Supreme Court; probate judges; district court clerks; probate court clerks; justices of the peace; court for jury trials; and county judges. (Stats. 1850, ch. 138, §§ 5-6, 8-9, 14, 18, 21, 26, pp. 417-422.) The second enactment by the Legislature which regulated court related charges to the public was in the May 1, 1851, "Act to regulate Fees in Office." The 1851 act provided that clerks, judges, justices of the peace in certain counties, as well as the Clerk of the Supreme Court may charge certain fees. (Stats. 1851, ch. 3, §§ 1, 5-10; 13-14, 18, 23-24, 27, 41-44, 47-48, 61, pp. 35-37, 40, 42-43, 47.) Section 74 of the 1851 act provided the following if fees greater then those specified were charged: "Any officer receiving more fees than are allowed by the law, shall be liable to the party injured to treble the amount of the total fees charged in the bill of fees. Any party so injured may sue for and recover back such treble amount in any court of civil jurisdiction in this State." (Stats. 1851, ch. 3, § 74, p. 48.)

The next enactment concerning permissible charges for court-related proceedings was the April 10, 1855, "Act To Regulate Fees of Office" The 1855 act provided that certain fees could be charged by judges, justices of the peace, courts and their clerks in specified counties. (Stats. 1855, ch. LXXIV, §§ 1-2, 5-8, 17, 20-27, 35, 38-50, pp. 81-82, 87-89, 93-96.) Section 51 of the 1855 act stated, "No other fees shall be charged than those specially set forth herein, nor shall any fees be charged for any other services than those mentioned in this Act." (Stats. 1855, ch. LXXIV, § 51, p. 96.) On April 28, 1857, the foregoing statutory enactments were modified by legislation entitled "An Act To regulate Fees in Office in certain Counties of this State" which set the maximum charges in certain counties for actions by: district court clerks; court of sessions clerks; probate court clerks; justices of the peace; interpreters; and probate judges. (Stats. 1857, ch. CCXXXVI, §§ 1, 3-6, 14-15, 17, pp. 273-275, 278-279.) On March 28, 1868, the Legislature adopted "An Act to regulate fees of office." It regulated fees chargeable in various counties by: all court clerks; interpreters; justices of the peace; and court commissioners. (Stats. 1868, ch. CCCLXVI, §§ 1-3, 5-7, 15, 19, 21, pp. 436-439, 443-446.) Section 22 of the 1868 act provided, "The officers

---

[7]Although not included in section 26820 et seq., Health and Safety Code section 103470 permits the county clerk to charge a filing fee for a petition to establish a record of birth, death, or marriage.

above named shall receive no other fees for any service performed by them in any action or proceeding, or for the performance of any service for which fees are allowed; and in any case of violation of the provisions of this Act, the party demanding or receiving any fees not herein allowed shall be liable to refund the same to the party aggrieved, with treble the amount as damages, besides costs of suit; and may be indicted . . . ." (Stats. 1868, ch. CCCLXVI, § 22, p. 446.) In 1887, additional legislation was adopted regulating the amount of fees chargeable by justices of the peace and county clerks in specified counties. (Stats. 1887, ch. CLXIX, § 192, pp. 199-201.)

The method for collection of fees by both judicial and other officials became the subject of confusion and criticism. By 1892, the practice had developed of charging varying fees in different counties. In part, this confusion and criticism was caused because the aforementioned fee statutes did not uniformly apply to all counties. In his 1892 report to the Governor, Attorney General William H. H. Hart urged the adoption of uniform statewide fees that could be charged by county officials. Attorney General Hart wrote: "Nearly every county in this State has a different fee bill. There is no uniformity. There is no reason why there should not be a uniform fee bill throughout the entire State, so that the people knowing the fees in their own county would know the fees of other counties." (Rep. of the Attorney-General of the State of California. (1892) p. 5.) In a report to the Governor dated November 8, 1894, Attorney General Hart again urged adoption of a uniform fee bill. He wrote: "It is now almost impossible to keep track of the fee bills of the various counties, and the fact that almost every county has a separate fee bill has caused this office and many county officers a great deal of annoyance. A uniform fee bill would remedy the difficulty." (Rep. of the Attorney-General of the State of California (1894) p. 25.) Several weeks after Attorney General Hart's report, an article in the San Francisco Call newspaper reported that various local officials had concluded that the fee collection law as it was in existence was "wholly impracticable." (*It Is A Misfit. The New Fee Law Causes Anxiety*, S.F. Call (Nov. 23, 1894) p. 5, col. 4.) Governor H. H. Markham also expressed concern about the varying fees charged by different counties for services. In a message to the Legislature, Governor Markham called attention to the views of Attorney General Hart concerning the need for a uniform fee bill. In a portion of his second biennial message to the Legislature relating to the Attorney General, Governor Markham stated: "I fully concur in his views regarding the necessity for the passage of a uniform fee bill. This is a very important matter and demands legislation." (Governor's Second Biennial Message to Leg. (Jan. 7, 1895) p. 19.) In January 1895, Governor James H. Budd was inaugurated. In his inaugural address he referred to the differing taxes and fees charged in

various counties and said: "Again, many counties have different fee bills, and while the Clerk's fees in one county might not exceed in a probate or contested case the sum of $5, in other counties they may run into the hundreds. These unfounded and unnecessary differences impose unequal burdens upon the people." (Governor's Inaugural Address to Leg. (Jan. 11, 1895) p. 13.)

In an effort to provide for uniform fees, Assembly Bill No. 681 was introduced on February 7, 1895. It provided a schedule of fees that could be charged by: county clerks; justices of the peace; as well as other county officials. (Assem. Bill No. 681 (1895 Reg. Sess.) §§ 1-8.) Eventually, on March 28, 1895, Governor Budd signed Assembly Bill No. 681 which sought to provide for uniform fees throughout California's counties. (Stats. 1895, ch. CCVII, §§ 1-4, pp. 268-274; accord, *Kiernan* v. *Swan* (1901) 131 Cal. 410, 413-414 [63 P. 768]; *Dwyer* v. *Parker* (1897) 115 Cal. 544, 549 [47 P. 372].) The beginning of the 1895 statute stated, "The following . . . officers shall charge and collect the following fees . . . ." (Stats. 1895, ch. CCVII, § 1, p. 267.)

Eventually, the uniform fee statute was placed in the Political Code in 1907. (Stats. 1907, ch. 282, § 1, pp. 548-550.) While placed in the Political Code, regular modifications were made to the fee statute by the Legislature. (Stats. 1911, ch. 265, § 1, pp. 444-445; Stats. 1917, ch. 590, § 1, pp. 902-904; Stats. 1921, ch. 210, § 1, pp. 239-241; Stats. 1923, ch. 342, § 1, pp. 710-712; Stats. 1933, ch. 746, §§ 1-3, pp. 1908-1913; Stats. 1935, ch. 480, § 1, pp. 1553-1555; Stats. 1939, ch. 782, § 1, pp. 2311-2313; Stats. 1943, ch. 963, § 1, pp. 2846-2848; Stats. 1946, ch. 1307, § 1, pp. 2456-2458.) In 1947, the California Code Commission recommended codification and consolidation of statutes relating to local entities. Introduced as Senate Bill No. 1117 (1947 Reg. Sess.), it was described prior to passage by Legislative Counsel Fred B. Wood as follows: "This bill, prepared by the California Code Commission, assembles, codifies and consolidates the law relating to counties as such. . . . [¶] It makes no substantive changes in existing law, but rearranges and restates in simplified language the substance of existing laws, and repeals obsolete and superseded statutes." (Legis. Counsel, Rep. on Sen. Bill No. 1117 (1947 Reg. Sess.) May 25, 1947, p. 1.) Section 26820 was enacted and placed in the Government Code. (Stats. 1947, ch. 424, § 1, p. 1146.) As part of the 1947 legislation, section 26856 was adopted which stated, "The fees fixed by this article are in full for all services rendered by the county clerk in any civil action or special proceeding." (Stats. 1947, ch. 424, § 1, p. 1149.) The express language and legislative history of the fee statutes indicate: extensive statutory coverage of the subject; an effort in 1895 to reduce and in some cases eliminate the differences in fees charged in

the various counties; and throughout California history regular legislative actions to set the amount of fees charged by superior courts.

### 4. *Section 54985*

Section 54985 sets limits on the powers of a county to increase fees for judicial functions. Section 54985, subdivision (a) allows counties to increase or decrease various fees in order to recover cost of services.[8] However, section 54985, subdivision (c)(1) sets forth an exception to the power of a "county" to increase a fee for judicial services. Section 54985, subdivision (c) states in its entirety, "This chapter shall not apply to any of the following: [¶] (1) Any fee charged or collected by a court clerk pursuant to Section 26820.4, 26823, 26824, 26826, 26827, 26827.4, 26830, 72054, 72055, 72056, 72059, 72060, or 72061 of the Government Code or Section 10554 of the Health and Safety Code, and any other fee or charge that may be assessed, charged, collected, or levied, pursuant to law for filing judicial documents or for other judicial functions." In other words, section 54985, subdivision (c)(1) prohibits the county from increasing fees for "judicial functions" because of an increase in costs.

### 5. *Conciliation court*

Further, retired Judges Hogoboom, Markey, and Olson cite to the expansive legislative coverage of matters concerning conciliation court mediation. They argue the issue of conciliation court fees is completely covered by section 68070, subdivision (a)(1) and section 26820 et seq. as set forth above. They rely on the language in section 68070, subdivision (a)(1) which prohibits the imposition of "any . . . charge" for "any legal proceeding" except as "allowed by law." Conciliation court certainly involves a "proceeding" within the meaning of section 68070, subdivision (a)(1). The "Family Conciliation Court Law" in Family Code section 1800 et seq. does the following: establishes jurisdiction in the " 'family conciliation court' " (Fam. Code, § 1810); requires the assignment of a judge to conciliation court

---

[8]Section 54985, subdivision (a) states in its entirety, "Notwithstanding any other provision of law which prescribes an amount or otherwise limits the amount of a fee or charge which may be levied by a county, a county service area, or a county waterworks district governed by a county board of supervisors, a county board of supervisors shall have the authority to increase or decrease any such fee or charge, which is otherwise authorized to be levied by another provision of law, in the amount reasonably necessary to recover the cost of providing any product or service or the cost of enforcing any regulation for which the fee or charge is levied. The fee or charge may reflect the average cost of providing any product or service or enforcing any regulation. Indirect costs which may be reflected in the cost of providing any product or service or the cost of enforcing any regulation shall be limited to those items that are included in the federal Office of Management and Budget Circular A-87 on January 1, 1984."

(Fam. Code, § 1811); permits the transfer of conciliation court matters to other judges (Fam. Code, § 1812, subd. (b)); permits a judge to receive reports and recommendations, direct the holding of hearings, authorize the conducting of an investigation, and order mediation by the supervising and associate counselors of the conciliation court (Fam. Code, §§ 1814-1815); and directs judges to require hearings be conducted in private; establishes that all communications are to be official information within the meaning of Evidence Code section 1040, and requires that all files be "closed." (Fam. Code, § 1818.) Moreover, the Family Conciliation Court Law provides for: the filing of a petition (Fam. Code, § 1831); a prohibition against charging of a fee for filing a petition (Fam. Code, § 1835); the conduct of formal and informal hearings (Fam. Code, §§ 1836-1837); issuance of orders (Fam. Code, § 1839); and regulation of the relationship between dissolution, legal separation, marital nullity, and conciliation proceedings. (Fam. Code, §§ 1840-1842.) In fact, the Legislature has chosen to utilize the term "proceedings" when referring to conciliation court matters. (Fam. Code, §§ 1814, subd. (b)(1), 1840, subd. (c), 1841, 1842, subd. (a).) Moreover matters subject to the conciliation court are heard by judges who conduct "hearings." (Fam. Code, §§ 1811, 1818.) Nothing in the conciliation court law explicitly states that there is a right to impose a charge, apart from the aforementioned portions of section 26820 et seq., for mediation in family law cases.

### 6. *Conclusion*

The foregoing statutory scheme indicates that in the field of conciliation court and mediation, the state has preempted the right to impose fees. As noted previously, the test of whether the Legislature has by implication " 'fully occupied' " a field of law includes situation where the " 'subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern . . . .' " (*Sherwin-Williams Co.* v. *City of Los Angeles, supra,* 4 Cal.4th at p. 898.) The Legislature has provided only for: the limited application of fees for conciliation court services in Napa, Shasta, and Riverside Counties; a statewide charge on family law litigants of $15; and charges for marriage related documents. Further, counties and boards of supervisors are prohibited from increasing "any" fee for a "judicial function[]" due to increases in costs. (§ 54985, subd. (c)(1)). Also, the legislative intent to preempt the field is illustrated by the complete ban on any fee for filing a conciliation court petition. In 1872, by adopting former Code of Civil Procedure section 129, the Legislature prohibited the use of local court rules to impose a fee in a legal proceeding. The first legislative enactment concerning fees was in 1850. In the past 146 years, the Legislature has repeatedly adopted statutes

regulating the amount of fees that can be charged by superior courts. Beginning in 1892, the Attorney General and two Governors urged the Legislature to adopt legislation which would provide uniform fees throughout the state. Although subsequent enactments have provided specific fees for mediation statewide and in certain specifically enumerated counties, no legislation has been adopted which permits local courts to impose a charge of the type challenged in this case. When we examine the whole purpose and scope of the legislative scheme, it is clear the Legislature intended that mediation fees be controlled by general laws and the costs to be assessed to the public for access to the conciliation court has become exclusively a matter of state concern. The extensive legislation described in this opinion illustrates in this area " 'the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern . . . .' " (*Sherwin-Williams Co.* v. *City of Los Angeles, supra*, 4 Cal.4th at p. 898.)

## B. *Section 68070, subdivision (a)(1)*

Apart from preemption, there is an additional reason why local rule 14.4.1 may not be enforced. As noted previously, section 68070, subdivision (a)(1) prohibits any superior or municipal court from enacting local rules which impose "any . . . charge . . . upon any legal proceeding." Utilizing traditional rules of statutory interpretation, we conclude local rule 14.4.1 imposes a charge on a legal proceeding for two separate reasons. **(4)** We apply the following standard of statutory review described by our Supreme Court: "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent. [Citation.]" (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; *People* v. *Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) Further, our Supreme Court has noted: " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . .' " (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) However, the literal meaning of a statute must be in accord with its purpose as our Supreme Court noted in *Lakin* v. *Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659 [25 Cal.Rptr.2d 109, 863 P.2d 179], as follows: "We are not prohibited 'from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions

relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute]. . . .' " In *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299], our Supreme Court added: "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation] . . . ." If there is some ambiguity as to the meaning of the language of a statute resort to Legislative Counsel's Digests and committee reports may be appropriate. (*Granberry* v. *Islay Investments* (1995) 9 Cal.4th 738, 745 [38 Cal.Rptr.2d 650, 889 P.2d 970]; *Ornelas* v. *Randolph* (1993) 4 Cal.4th 1095, 1105-1106, fn. 8 [17 Cal.Rptr.2d 594, 847 P.2d 560]; *California Assn. of Psychology Providers* v. *Rank* (1990) 51 Cal.3d 1, 17 [270 Cal.Rptr. 796, 793 P.2d 2]; *People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1007-1008 [239 Cal.Rptr. 656, 741 P.2d 154].)

There are two reasons section 68070, subdivision (a)(1) expressly prohibits the imposition of the fee in the present case. First, as we have explained, the Legislature has chosen to define those events occurring before the conciliation court as proceedings (Fam. Code, §§ 1814, subd. (b)(1), 1840, subd. (c), 1841, 1842, subd. (a)) or hearings. (Fam. Code, §§ 1811, 1818.) Since local rule 14.4.1 imposes a charge on a legal proceeding, it thereby violates the express prohibition of section 68070, subdivision (a)(1).

Second, local rule 14.4.1 acts as a charge on all proceedings when there are issues of custody or visitation. Family Code section 3170 states, "If it appears on the face of a petition, application, or other pleading to obtain or modify a temporary or permanent custody or visitation order that custody, visitation, or both are contested, the court shall set the contested issues for mediation." If the custody or visitation dispute is not set for mediation, there can be no action taken concerning the disputed issues involving minors. Family Code section 3175 provides, "If a matter is set for mediation pursuant to this chapter, the mediation shall be set before or concurrent with the setting of the matter for hearing." Family Code sections 3170 and 3175 were enacted at the same time as the Family Conciliation Court Law. (*Guardianship of M.S.W.* (1982) 136 Cal.App.3d 708, 712 [186 Cal.Rptr. 430]; Stats. 1980, ch. 48, § 5, p. 133.) The interplay between Family Code sections 3170 and 3175 is such that as a practical matter, the failure to set the dispute for mediation in the conciliation court is a bar to a hearing on all custody or visitation disputes. (*In re Marriage of Economou* (1990) 224 Cal.App.3d 1466, 1485 [274 Cal.Rptr. 473]; Hogoboom, Cal. Practice Guide: Family Law (The Rutter Group 1996) ¶ 7:181, p. 7-49; see *Bach* v.

*State Bar* (1987) 43 Cal.3d 848, 852 [239 Cal.Rptr. 302, 740 P.2d 414]; *Howard* v. *Drapkin* (1990) 222 Cal.App.3d 843, 858 & fn. 8 [271 Cal.Rptr. 893]; *Ohmer* v. *Superior Court* (1983) 148 Cal.App.3d 661, 668 [196 Cal.Rptr. 224]; *McLaughlin* v. *Superior Court* (1983) 140 Cal.App.3d 473, 475 [189 Cal.Rptr. 479].) In other words, the failure to pay the fee mandated by local rule 14.4.1 not only absolutely bars the commencement of mediation in the conciliation court but also thereby the conduct of any proceedings on any other issue. The commonsense application of local rule 14.4.1 is such that it is a fee, which if not paid, prevents any proceedings from occurring. As a result, the local rule acts as a charge of all legal proceedings, because without its payment, nothing will occur. For these two reasons, we conclude local rule 14.4.1 violates section 68070, subdivision (a)(1).

## C. *Family Code section 3163*

The respondent court argues that Family Code section 3163 provides a statutory authorization for the imposition of fees beyond those already charged for use of the mediation process. Family Code section 3163 states, "Courts shall develop local rules to respond to requests for a change of mediators or to general problems relating to mediation." We respectfully reject the respondent court's argument that Family Code section 3163 gives it the power to impose a mediation court fee by means of a local rule. We agree with retired Judges Hogoboom, Markey, and Olson that the development of local rules to respond to "general problems relating to mediation" is not an invitation to impose fees; particularly given the broad scope of statewide legislatively developed law concerning conciliation court and fees. We reach this conclusion in connection with both the preemption and statutory interpretation of section 68070, subdivision (a)(1) contentions of retired Judges Hogoboom, Markey, and Olson.

The Legislative Counsel's Digests and committee reports we have reviewed indicate that when Family Code section 3163 and its predecessor, former Civil Code section 4607, subdivision (g), were enacted, there was no intention to provide local courts with the ability to impose fees for mediation. Rather, the "general problems relating to mediation" adverted to in Family Code section 3163 and its predecessor, former Civil Code section 4607, subdivision (g), were issues relating to relationships between the parties. Family Code section 3163 was adopted in 1993. (Stats. 1993, ch. 219.) Family Code section 3163 was based upon former Civil Code section 4607, subdivision (g). The Law Revision Commission comment for Family Code section 3163 states in its entirety, "Section 3163 continues without substantive change and generalizes former Civil Code section 4607(g). See

Section 3160 Comment (generalization of provisions to apply both to mediation of stepparent or grandparent visitation and to mediation of contested issues)." (See Cal. Law Revision Com. com., 29D West's Ann. Fam. Code, foll. § 3163, p. 292.) There is nothing in the legislative history of Family Code section 3163 which indicates that the Legislature intended the enactment to permit the imposition of additional fees beyond those already charged for use of the conciliation court.

Civil Code former section 4607, subdivision (g), upon which Family Code section 3163 was based, was adopted in 1990. (Stats. 1990, ch. 348, p. 1670.) When initially introduced by Senator Lockyer on February 5, 1990, section 1 of Senate Bill No. 1897, 1989-1990 Regular Session, which proposed Civil Code section 4607, subdivision (g), stated: "Upon motion of either party, the court shall either decline to order that the matter be set for mediation or shall order that the parties meet with the mediator separately and at separate times, if there is a history of spousal or child abuse or if an application has been made or an order has been issued pursuant to paragraph (2), (3), or (6) of subdivision (a) of Section 4359 or pursuant to Section 4359 or pursuant to Section 4516." On March 8, 1990, Senate Bill No. 1897 was amended to propose that Civil Code section 4607, subdivision (g) state, as it did when later enacted, "Courts shall develop local rules to respond to requests for a change of mediators or to general problems relating to mediation." (Sen. Amend. to Sen. Bill No. 1897 (1989-1990 Reg. Sess.) Mar. 8, 1990.) On March 21, 1990, Senate Bill No. 1897 was considered by the Senate Committee on Judiciary. A report prepared for the committee indicated: "The bill would also require the courts to develop local rules to respond to requests for a change of mediators or to general problems relating to mediation. [¶] The purposes of this bill are to assure that mediation focuses on the children and to address the needs of the parties." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1897 (1989-1990 Reg. Sess.) as amended Mar. 8, 1990, p. 2.) Further, the report noted: "This bill would also require courts to develop local rules to respond to requests for a change of mediator or to general problems relating to mediation. The purpose of this provision is to allow courts to determine how they can address the needs of parties with problems which stem from relationships in mediation." (*Ibid.*) After the March 21, 1990, hearing, Senate Bill No. 1897 which included the language in former Civil Code section 4607, subdivision (g) was ultimately passed without further amendment. The committee report prepared for floor consideration in the upper house in connection with Senate Bill No. 1897 reiterated the analysis in the March 21, 1990, Senate report. The report indicated the bill would require courts to develop local rules relating to problems in mediation. Further, the purpose of the local rule requirement in former Civil Code section 4607, subdivision (g) was to allow courts to

determine how to address problems which stem from relationships in the mediation process. (Sen. Rules Com., Office of Sen. Floor Analyses, Analysis of Sen. Bill No. 1897 (1989-1990 Reg. Sess.) p. 2.) The only report prepared for Assembly consideration indicated, "Requires the courts to develop local rules to respond to . . . general problems relating to mediation." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1897 (1989-1990 Gen. Sess.) p. 2.) After passage by the Assembly with unrelated amendments, when the lower house modifications were considered by the Senate, a report prepared for a third reading in the upper house reiterated the fact the legislation required courts to develop rules which would address general problems relating to mediation. (Of. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1897 (1989-1990 Reg. Sess.) p. 1.) No committee or other legislative reports mentioned even inferentially that Senate Bill No. 1897 would allow a local court to impose any fees upon the parties for mediation. The Legislative Counsel's Digest indicated in full: "Existing law requires the mediation of contested child custody and visitation issues. A goal of mediation is to develop an agreement assuring the child or children's close and continuing contact with both parents. The mediator is required to use his or her best efforts to effect a settlement of the custody or visitation dispute. The mediator may, consistent with local court rules, render a recommendation to the court as to custody or visitation. [¶] This bill would, in addition to the above-specified goal, provide that a goal of mediation is to develop an agreement that is in the best interests of the child and would require the mediator to attempt to effect a settlement in the best interests of the child. [¶] This bill would require the courts to develop local rules to respond to requests for a change of mediators or to general problems relating to mediation." (See Legis. Counsel's Dig., Sen. Bill No. 1897, 5 Stats. 1990 (Reg. Sess.) Summary Dig., p. 130.) All the reports which discussed the issue indicated the proposed language in former Civil Code section 4607, subdivision (g) was intended to require superior courts to develop rules so as to facilitate changing mediators and addressing the needs of the parties—not authorizing additional fees for mediation beyond those already charged.

## D. *Domestic Violence Prevention Act*

Retired Judges Hogoboom, Markey, and Olson argue that local rule 14.4.1 also violates the proscription contained in the Domestic Violence Prevention Act against charging filing fees. As applied in the respondent court, certain domestic violence matters are subject to local rule 14.4.1. Certain domestic violence proceedings are assigned to the conciliation court for mediation. Local rule 14.4.1 requires the assessment of the fee "for Providing Family Law Mediation." This is a somewhat closer issue than the question of

whether charging a fee for conciliation court mediation is lawful. The Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.) has as its stated purpose, "The purposes of this division are to prevent the recurrence of acts of violence and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (Fam. Code, § 6220.) Family Code section 6222, subdivision (a) provides, "There is no filing fee for a petition, response, or modification of a protective order filed in a proceeding brought pursuant to this division." Retired Judges Hogoboom, Markey, and Olson also cite to section 26830, subdivision (a)(6) which states: "(a) Except as provided in subdivision (b), the fee for filing any notice of motion, or any other paper requiring a hearing subsequent to the first paper, or any notice of intention to move for a new trial of any civil action or special proceeding, or an application for renewal of a judgment, is fourteen dollars ($14). [¶] However, there shall be no fee for filing any of the following: [¶] . . . [¶] (6) A show-cause hearing on an application for an order prohibiting domestic violence." Our previous conclusions concerning the preemptive effect of the Legislature's enactments concerning fees and the effect of section 68070, subdivision (a)(1) in connection with conciliation court mediation in the marital dissolution context have equal application to the Domestic Violence Prevention Act proceedings.

## IV. Disposition

Let a peremptory writ of mandate issue enjoining the respondent court from enforcing rule 14.4.1 of the Rules of the Los Angeles County Superior Court. This opinion shall be final on January 1, 1997, pursuant to rule 24(d) of the California Rules of Court. Each side is to bear its own costs.

Grignon, J., and Armstrong, J., concurred.

On January 6, 1997, the opinion was modified to read as printed above.